## FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**JEFFREY D. STONEBRAKER**
Clark County Chief Public Defender
Jeffersonville, Indiana 47130

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GEORGE A. NUNLEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 10A04-1212-CR-630 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Daniel E. Moore, Judge
Cause No. 10C01-1005-FC-082

**October 2, 2013**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

George A. Nunley appeals his conviction for robbery as a Class C felony and adjudication as an habitual offender. Nunley presents two issues on appeal: 1) whether there is sufficient evidence to support his robbery conviction; and 2) whether the trial court erred in allowing the State to amend the habitual offender allegation. Concluding that sufficient evidence supports Nunley's robbery conviction but that the trial court erred in allowing the State to amend the habitual offender allegation, we affirm in part, reverse in part, and remand.

## Facts and Procedural History

In April 2010, Nunley and his girlfriend Debe Mueller went to a Rite Aid Pharmacy store. The manager on duty at the time was Norman Judd. Judd greeted Nunley and Mueller and asked them if they needed any assistance; they replied that they did not. A few minutes later, Judd again asked them if they needed any help, to which they replied no. Soon thereafter, Judd went into the store's restroom and checked the trash and baby-changer, per store policy, to see whether there was any empty packaging or other trash suggesting that someone had tried to steal merchandise from the store. Judd found nothing of concern at that time.

As Judd left the restroom, Nunley passed him and did not make eye contact or respond to Judd's greeting. Judd found that suspicious and stayed in that area of the store until Nunley left the bathroom. When Nunley left the bathroom, Judd went back into the restroom and found several empty DVD packages and wrapping. Judd ran out of the bathroom, and

asked Nunley where the product was. At this point, Nunley was nearly running to the front of the store. Nunley turned around and asked Judd, "are you accusing me of stealing, bitch?" Transcript at 195. Judd told Nunley that he would let the police handle the situation. Nunley and Mueller were making their way out of the store as Judd picked up his phone and neared the front of the store. Nunley had gone through the interior set of doors and was in a breezeway and not yet through the exterior set of doors when he turned around and walked over to Judd. Judd testified that Nunley came over to him, shoved him, and said, "don't you call the police on me, bitch." Tr. at 196. Nunley then left the store. Judd then walked outside to get Nunley's license plate number. When the police arrived, Judd gave the officer Nunley's license plate number and provided a copy of the store's surveillance camera footage and the DVD packaging found in the restroom. Before he left that night, Judd looked through the store to see if he could find any of the missing DVDs, but he did not find any.

In May 2010, the State charged Nunley with robbery as a Class C felony and alleged that he was an habitual offender. A jury trial was scheduled to begin on October 9, 2012, and a jury was empaneled that day but no testimony was heard. On October 10, 2012, the State requested leave to amend the habitual offender charge; the trial court granted the request over Nunley's objection and continued the trial to six days later. The trial then resumed on October 16, 2012, and the following day the jury found Nunley guilty of the robbery charge and found him to be an habitual offender. In November 2012, the court sentenced Nunley to eight years executed for the robbery conviction and enhanced his sentence by twelve years

based on the habitual offender finding. This appeal followed. Additional facts will be supplied as necessary.

Discussion and Decision

I. Sufficiency of the Evidence

A. Standard of Review

The standard for reviewing sufficiency of the evidence claims is well settled. We do not reweigh the evidence or assess the credibility of the witnesses. West v. State, 755 N.E.2d 173, 185 (Ind. 2001). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable trier-of-fact could have found the defendant guilty beyond a reasonable doubt. Id.

B. Nunley's Robbery Conviction

Our robbery statute provides that a Class C felony robbery is committed when:

> A person . . . knowingly or intentionally takes property from another person or from the presence of another person:
> (1) by using or threatening the use of force on any person; or
> (2) by putting any person in fear[.]

Ind. Code § 35-42-5-1. Nunley acknowledges that a conviction may rest upon the uncorroborated testimony of the victim. Ludy v. State, 784 N.E.2d 459, 461 (Ind. 2003). Nunley argues, in essence, that the evidence indicates that once he exited through the first set of doors at the store, a theft had been completed and that when he turned around to shove Judd and tell Judd not to call the police, that confrontation was not necessary to complete the taking and thus does not support a conviction for robbery. See Ind. Code § 35-43-4-2(a) ("A

4

person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft . . . .").

On the contrary, the record supplies sufficient evidence from which the jury could have concluded that the confrontation was not a separate incident but was directly linked to Judd's questioning of Nunley, and was integral to Nunley's attempt to complete the taking. Judd testified that Nunley "kind of angled to the door but he came back to me when he saw me on the phone when I said I would let the police handle it." Tr. at 243. Our review of the record and the surveillance video leads us to conclude that the situation was more fluid and less delineated than Nunley suggests. Judd also testified that not only did Nunley shove him, but that Nunley caused him to fear for his safety and for that of his co-workers. Further, Judd testified that he has to call the police at least four or five times each month due to shoplifting, but that none of those other shoplifters had caused him to be scared. Nunley is essentially asking us to reweigh the evidence, which we cannot do.

Nunley also argues that there was insufficient evidence to support a determination that he actually took property from the store. Again, this is a request for us to reweigh the evidence. The recovery of stolen property is not essential to prove that a robbery was committed or that the accused committed it. Leavell v. State, 455 N.E.2d 1110, 1115 (Ind. 1983). Judd testified that he checked the restroom just before Nunley went into it and there was no inventory packaging in the restroom at that time, but that the DVD wrappers and packaging were in there right after Nunley exited the restroom. Because it is common for

5

shoplifters to leave packaging in the restroom in order to discard security tags and make items more portable, Judd was specifically looking for such packaging each time he inspected the restroom—both before and after Nunley used it. Judd also testified that, while he did not check the computer inventory following the incident with Nunley, he did look through the rest of the store to see if any of the missing DVDs had been placed somewhere else in the store, and he found no such evidence. We conclude that there was sufficient evidence from which a jury could have determined that the State proved the elements of robbery beyond a reasonable doubt.

## II. Amendment of Habitual Offender Allegation

Nunley also argues that the trial court erred in allowing the State to amend the habitual offender allegation portion of the information after the jury was empaneled. We agree.

The original information listed two prior convictions for Nunley to support the habitual offender count: a theft and possession of cocaine. However, the parties agree that the conviction for possession of cocaine was not a predicate offense under the habitual offender statute.[1] The State requested leave to amend the habitual offender charge the day after the jury was empaneled in order to remove the possession of cocaine charge and add additional theft charges that would go to an habitual offender allegation. Nunley objected to the amendment, noting that he had recognized that the State could not establish that Nunley

---

[1] Indiana Code section 35-50-2-8(d)(3) provides that a conviction does not count for purposes of the habitual offender statute if it is an offense under Indiana Code section 35-48-4; it is not listed in Indiana Code section 35-50-2-2(b)(4); and the offender has no more than one unrelated conviction for drug dealing. Nunley and his conviction for possession of cocaine met these requirements, and thus the conviction did not count for purposes of the habitual offender statute.

6

was an habitual offender based on the information, and he had prepared to go forward on that basis. The court recessed for an hour, and upon resuming, both parties gave their arguments regarding the proposed amendment. Ultimately, the court allowed the amendment but continued the trial for six days so that Nunley could prepare his defense.

Indiana Code section 35-34-1-5 deals with amendments to an information and has four subsections—(a), (b), (c), and (e)—that, at first blush, could potentially apply to the amendment here.[2] We conclude below that none of these subsections allows the amendment in this case.

Subsection (a) provides that "[a]n indictment or information which charges the commission of an offense may not be dismissed but may be amended on motion by the prosecuting attorney at any time because of any immaterial defect . . . ." Ind. Code § 35-34-1-5(a). The subsection lists eight examples of immaterial defects, none of which apply to the amendment at hand, and then allows a ninth catch-all category for "any other defect which does not prejudice the substantial rights of the defendant." Id. While the habitual offender charge is not a separate "offense" under Indiana law, our supreme court has held that it is subject to the rules governing charging of criminal offenses, such as Indiana Code section 35-34-1-5. Murphy v. State, 499 N.E.2d 1077, 1083 (Ind. 1986). The statute also allows for an amendment "at any time." Ind. Code § 35-34-1-5(a). However, we doubt that the proposed amendment was "immaterial," and moreover, we conclude that Nunley's substantial rights were prejudiced by the amendment.

---

[2] Subsection (d) does not relate to the timing of a request to amend the information or considerations in

7

A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights. Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges.

Gomez v. State, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009) (citations and internal quotations omitted), trans. denied. The State argues that the amendment did not affect any defense that Nunley may have had because he "does not argue that he was unaware of his four prior theft convictions," and he had "ample time—six days—to determine if any valid defenses applied." Brief of Appellee at 17. We disagree with the State and conclude that the amendment drastically changed Nunley's available defense and his position because under the original information he planned to use the viable defense that the State had not alleged convictions that would support an habitual offender finding. That defense was not available to him under the amended information. The amendment therefore violated Nunley's substantial rights and was not allowed under subsection (a).

Subsection (b) provides:

The indictment or information may be amended in matters of substance and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant at any time:
    (1) up to:
        (A) thirty (30) days if the defendant is charged with a felony; or
        (B) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;
    before the omnibus date; or
    (2) before the commencement of trial;
if the amendment does not prejudice the substantial rights of the defendant. When the information or indictment is amended, it shall be signed by the prosecuting attorney or a deputy prosecuting attorney.

determining whether to grant such a request.

Ind. Code § 35-34-1-5(b). This subsection then allows amendments of substance, but only before trial and only if the amendment does not prejudice the substantial rights of the defendant. As noted above, the amendment did prejudice Nunley's substantial rights. In addition, the amendment was made after the commencement of trial. See Gibbs v. State, 952 N.E.2d 214, 221-22 (Ind. Ct. App. 2011) (concluding that a jury trial commences with voir dire), trans. denied. The amendment was therefore not allowed under subsection (b).

Subsection (c) provides that, "[u]pon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant." Ind. Code § 35-34-1-5(c). This subsection explicitly allows amendments during trial, but only amendments of form and only where the defendant's substantial rights are not prejudiced. Again, we note that Nunley's substantial rights were prejudiced. In addition, we conclude that the amendment was one of substance. "Whether an amendment is a matter of substance or form is a question of law, which we review de novo." Gibbs, 952 N.E.2d at 221.

> [A]n amendment is one of form, not substance, if both (a) a defense under the original information would be equally available after the amendment, and (b) the accused's evidence would apply equally to the information in either form. And an amendment is one of substance only if it is essential to making a valid charge of the crime.

Fields v. State, 888 N.E.2d 304, 310 (Ind. Ct. App. 2008) (quoting Fajardo v. State, 859 N.E.2d 1201, 1207 (Ind. 2007)). Because the amendment was essential to the allegation of Nunley being an habitual offender, and because Nunley's defense under the original

9

information evaporated under the amendment, the amendment was one of substance rather than form and was not allowed under subsection (c). See id. (concluding that a defense was not equally available after an amendment in which the State proposed to change the class of a prior offense, and the class was an essential element in the habitual offender charge).

Finally, subsection (e) specifically references habitual offender charges and provides that:

> An amendment of an indictment or information to include a habitual offender charge . . . must be made at least thirty (30) days before the commencement of trial. However, upon a showing of good cause, the court may permit the filing of a habitual offender charge at any time before the commencement of the trial if the amendment does not prejudice the substantial rights of the defendant. If the court permits the filing of a habitual offender charge less than thirty (30) days before the commencement of trial, the court shall grant a continuance at the request of the:
>     (1) state, for good cause shown; or
>     (2) defendant, for any reason.

Ind. Code § 35-34-1-5(e). First, this subsection applies to amendments "to include" an habitual offender charge, whereas here, the amendment was to an existing habitual offender charge. Haymaker v. State, 667 N.E.2d 1113, 1114 (Ind. 1996) ("The challenged amendment is merely an amendment to the already existing habitual offender information, rather than an addition of an habitual offender charge, as contemplated by I.C. § 35–34–1–5(e)."). The subsection does allow an amendment "at any time" but only if certain requirements are met, and those requirements were not met here. As discussed above, the amendment here was proposed after the commencement of trial and it prejudiced Nunley's substantial rights. Additionally, the State, commendably, admitted at the time of the proposed amendment that there was no good cause for the amendment. The convictions that were proposed to be added

10

were all from that same court, and so were available to the State long before trial began and it was apparently simple oversight that led to the listing of the wrong convictions on the original information and a failure to catch the mistake before trial began. We therefore conclude that no part of Indiana Code section 35-34-1-5 allowed the amendment that was proposed by the State here.

One final issue to deal with is the fact that Nunley did not request a continuance when the amendment was allowed. The court stated that it would grant his motion to continue and restart the trial in six days, but no such motion is in the record. The State argues that Nunley's challenge to the amendment has been waived by his failure to request a continuance. The State cites to several cases in support of its proposition, none of which we find persuasive. In Haymaker, our supreme court concluded that the defendant's substantial rights had not been prejudiced, that the amendment was made before trial, and that even if subsection (e) had applied, the defendant had waived the issue for appeal because he failed to request a continuance for fear that it would conflict with his speedy trial request. 667 N.E.2d at 1114. In Wilson v. State, the issue again revolved around a pre-trial amendment, and a defendant who argued that he did not have time to prepare for the amendment but had not requested a continuance. 931 N.E.2d 914, 918 (Ind. Ct. App. 2010) ("[A] defendant's failure to request a continuance after a trial court allows a pre-trial substantive amendment to the charging information over defendant's objection results in waiver. Here, Wilson had the opportunity to request a continuance for the purpose of giving himself the opportunity to prepare his defense after the trial court allowed the State to amend the charging information

11

over his objection but chose not to pursue that course.") (emphasis added), <u>trans. denied</u>. The State also argues that Nunley reads <u>Gibbs</u>, 952 N.E.2d 214, too broadly because in that case, the information had been read to the jury by the time the amendment was requested, and "[i]n any event, <u>Gibbs</u> applies to amendments that are substantive." Br. of Appellee at 14. Not only have we concluded here that the amendment at issue was one of substance, but our analysis in <u>Gibbs</u> was broader than the State implies. In <u>Gibbs</u>, we concluded that

> [w]ith respect to amendments made after the commencement of trial, we find the reasoning in <u>Fajardo</u> and <u>Fuller</u> more persuasive. When the General Assembly amended I.C. § 35–34–1–5, it authorized a specific time frame in which the State could substantively amend a charging Information. As we concluded in <u>Fuller</u>, overlooking this pre-requisite by upholding an untimely amendment where a defendant has failed to move for a continuance would ignore the intent of the statute.

<u>Gibbs</u>, 952 N.E.2d at 224.

Also we note that after resuming court, following a recess to allow the parties to research the law regarding amendments, the court here allowed each side to present its argument about the proposed amendment. The judge then said, "[h]ere's what we're going to do, okay, I'm going to allow the amendment, but I'm going to grant your motion to continue. . ." Tr. at 112. While no such actual motion is in the record, it does not appear that the court gave Nunley a chance to request such a continuance, following the court's grant of the motion to amend, before granting a continuance. In effect, Nunley never had a chance to request a continuance and should not be penalized for the court's decision to give the parties more time to prepare in light of the amendment.

12

In sum, we conclude that Nunley has not waived this issue on appeal, and that the trial court erred in allowing the State's amendment. Because we conclude that the requested amendment to the information was not allowed, and all parties agree that Nunley was not an habitual offender as originally charged, we reverse habitual offender enhancement to Nunley's sentence.

## Conclusion

Concluding that sufficient evidence supports Nunley's robbery conviction but that the trial court erred in allowing the State to amend the habitual offender allegation, we affirm in part, reverse in part, and remand for the trial court to correct Nunley's sentence accordingly.

Affirmed in part, reversed in part, and remanded.

RILEY, J., and KIRSCH, J., concur.