Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 11 2014, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**ANNE C. KAISER**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTWOINE YOUNG, | ) | |
| | ) | |
| Appellant/Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1405-PC-217 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee/Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
Cause No. 49G20-1106-PC-042420

**December 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Antwoine Young was charged with Class A felony dealing in cocaine within 1000 feet of subsidized housing and Class B felony possession of cocaine within 1000 feet of subsidized housing; the probable-cause affidavit, however, states that the offense occurred within 1000 feet of a youth program center located within a church. In order to avoid facing a potential fifty-year sentence, Young pled guilty to the lesser-included Class B felony dealing charge, and received a sentence of twelve years in the Indiana Department of Correction. Thereafter he filed a petition for post-conviction relief, arguing that he received ineffective assistance of counsel and that his guilty plea was illusory because his attorney had failed to investigate the validity of the 1000-foot enhancement location, without which Young would not have been faced with the Class A felony and therefore would not have accepted the guilty plea. The post-conviction court denied his petition, and Young now appeals from the denial of post-conviction relief. Because Young has failed to show clear error, we affirm.

**Facts and Procedural History**

In May 2011 two undercover police officers purchased .13 grams ($20 dollars' worth) of crack cocaine from a black male—later identified as Antwoine Young—on the street in front of 422 North Oakland Avenue in Indianapolis. Thereafter, Young was arrested following a routine traffic stop and, according to the charging information, charged with Count I, Class A felony dealing in cocaine within 1000 feet of subsidized housing and Count II, Class B felony possession of cocaine within 1000 feet of subsidized housing. The probable-cause affidavit, however, states that the drug deal occurred within 1000 feet of a

2

"YOUTH PROGRAM CENTER AT STAINT [sic] MATTHEW LUTHERAN CHURCH." *See* Appellant's App. p. 21.

Six months later, Attorney Howard Green entered his appearance as Young's counsel. Attorney Green had been hired by Young's family because Young and his family were not satisfied with the plea agreement his public defender had presented to him and hoped Attorney Green could obtain a better plea deal. Thereafter, Young pled guilty to the lesser-included charge of Class B felony dealing in cocaine under Count I, pursuant to a plea agreement which provided that Count II would be dismissed and a sentence of twelve years would be imposed, with placement to be determined by the trial court. At the sentencing hearing, the trial court ordered that Young serve all twelve years at the DOC.

In November 2012 Young filed a pro se petition for post-conviction relief. One month later, defense counsel entered an appearance on Young's behalf. Thereafter, Young's counsel requested discovery information from the State; specifically, defense counsel requested that the State admit or deny (1) that the alleged drug offenses occurred in the street in front of 422 N. Oakland Avenue and (2) that the State at no time from the date of the alleged drug deal and Young's guilty-plea hearing had any knowledge of "subsidized housing" within 1000 feet of the location of the alleged drug deal. *See id.* at 62. The State admitted both, and clarified that "no subsidized housing was involved in this case." *Id.* at 64.

Young's post-conviction petition was amended by counsel in October 2013. In the amended petition, Young alleged that his guilty plea was not entered into knowingly, intelligently, and voluntarily because the benefit from his plea bargain was illusory, and

3

that he received ineffective assistance of trial counsel. Specifically, Young argued in his petition as follows:

1. Young pled guilty to avoid a risk that did not exist (conviction and sentencing for dealing cocaine within 1,000 feet of 'subsidized housing');

2. Young's benefit in pleading guilty to the lesser offense was illusory (because the risk of the charged Class A felony was bogus);

3. Young's guilty plea was not made knowingly, intelligently, and voluntarily (because the supposed benefit of the plea bargain to Young was illusory); and,

4. Young received ineffective assistance of trial counsel (because of counsel's failure to properly investigate the legitimacy of the alleged 'subsidized housing' element associated with the charged Class A felony and thereby also failing to recognize that in actuality there was no benefit to Young in pleading guilty).

*Id.* at 68.

The post-conviction hearing was held in November 2013. At the hearing, Attorney Green testified that he had not requested any information from the State regarding the alleged subsidized housing. He also testified that "[Young] had no interest in going to trial." P-C Tr. p. 17. Finally, the following colloquy occurred:

Q: . . . If you had known that the Class A [f]elony was not a legitimate charge, would you have – would your advice to Mr. Young have changed?

A: Well . . . there was still a delivery of cocaine to an undercover officer. So he still, he is still facing with that sort of penalty regardless. What would have cha[n]ged, I believe, is that my discussions with the State, I would have said, "Perhaps there should have been a better offer more appropriate based upon certain things." I don't know if that would have been fruitful. I think the State's perspective would have been regardless of the housing facility or that facility, they look at criminal history, they look at the act, they look at the dealing, the transfer of it to another officer, and they might want what they want anyway. But again, as I said, I wasn't – I was never going to take an A because I wouldn't take money from a family to get something that he could have got with anybody.

4

*Id.* at 19-20.

At the post-conviction hearing, Young testified that his primary motivation in taking the plea agreement was to avoid the fifty-year sentence he would have faced on the Class A felony, and that had he known the most serious charge he was facing was a Class B felony, he would not have accepted the plea agreement he was offered; rather he would have gone to trial on the Class B felony or would have accepted a plea to a Class C felony.[1]

Deputy Prosecutor John Bober also testified at the post-conviction hearing. He stated that the Indianapolis Metropolitan Police Department East District Narcotics had targeted an approximately two-mile area in Indianapolis, within which Young's drug deal had occurred; Bober assisted the police in this project and prosecuted "about 80 percent of the sixty-plus cases that were filed . . . ."—including Young's case. *Id.* at 27-28. Bober testified that he and another person prepared all the charging informations involved in this project, relying on templates to do so, and that they "supplied the detectives with the thousand foot locations." *Id*. at 30. Confronted with the inconsistencies in the charging information and probable-cause affidavit, Bober characterized this as a "scrivener's error" which would have been corrected had the case gone to trial. *Id.* at 32. Bober also testified that there were "numerous thousand foot locations in that particular area between schools, churches, subsidized housing, any other youth program centers. We had a plethora of locations to choose for each case." *Id.* Bober stated further: "I believe there is not a single

---

[1] But as the State observes, there was no Class C felony dealing in cocaine that Count I could have been reduced to under the statute in effect at the time of the offense. *See* Ind. Code Ann. § 35-48-4-1 (West 2012).

location in that area that is not within a thousand feet of a youth program center." *Id.* at 37.

Regarding St. Matthew Lutheran Church in particular, Bober stated that he had never actually gone inside the church, but had driven by it many times and had taken pictures of it in preparation for trial. *Id.* at 38. Bober also testified that he had called the "general number" of the church and had spoken with "someone who answered the phone from the church office and verified they had Sunday school." *Id.* at 39. He also stated that he "never had to go to trial with St. Matthew Lutheran Church at [sic] the thousand foot location." *Id.* at 42.

Finally, Jonathan Harwell, law student and law clerk at the Indiana State Public Defender's Office, testified that he had been assigned to determine whether there was, in fact, a youth program center at St. Matthew Lutheran Church. In furtherance of this assignment, Harwell visited the church to see if there were any "noticeable youth programs or anything like that in the area." *Id.* at 45. He did not see any signs, placards, or other indications of Sunday school and could not tell if the church was still open, but he spoke by telephone with Pastor Ralph Spears approximately three or four months before the post-conviction hearing. Harwell testified that based on "the information [Harwell] gathered from [Pastor Spears], the church had not been fully active as a church since 2008" and "even at that time the services being offered were more on a therapeutic basis than . . . what we would think of as your traditional Sunday school." *Id.* at 51, 53.

Following the hearing, the trial court issued findings of fact and conclusions of law. First, the court quoted at length from *Segura v. State*:

> [I]n the case of claims related to a defense or failure to mitigate a penalty, it must be shown that there is a reasonable probability that a more favorable result would have obtained in a competently run trial. However, for claims relating to penal consequences, a petitioner must establish, by objective facts, circumstances that support the conclusion that counsel's errors in advice as to penal consequences were material to the decision to pled. Merely alleging that the petitioner would not have pleaded is insufficient. Rather, specific facts, in addition to the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea. This case does not meet that standard. Segura offers nothing more than the naked allegation that his decision to plead would have been affected by counsel's advice.

Appellant's App. p. 151 (quoting in part from *Segura v. State*, 749 N.E.2d 496, 507-08 (Ind. 2001)) (internal citations omitted in original). The court then dismissed Young's post-conviction petition, stating: "[Young] here has shown nothing more than a conclusory allegation that but for counsel's mistake he would not have pled guilty. That is insufficient." *Id.*

Young now appeals the denial of post-conviction relief.

**Discussion and Decision**

In post-conviction proceedings, the petitioner bears the burden of proof by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment, and the standard of review is rigorous. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); *see also Trujillo v. State*, 962 N.E.2d 110, 113 (Ind. 2011). "To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." *Kubsch v. State*, 934 N.E.2d 1138, 1144 (Ind. 2010), *reh'g denied*. Here, the post-

conviction court made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citation and quotation marks omitted). "The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses." *Woods v. State*, 701 N.E.2d 1208, 1210 (Ind. 1998). Accordingly, we accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to the post-conviction court's conclusions of law. *Wilson v. State*, 799 N.E.2d 51, 53 (Ind. Ct. App. 2003).

On appeal, Young argues that that the post-conviction court erroneously relied on the standard established by *Segura*, 749 N.E.2d 496, rather than the proper standard from *Hill v. Lockhart*, 474 U.S. 52 (1985). In *Hill*, the United States Supreme Court held that the two-part test adopted in *Strickland v. Washington*, 466 U.S. 668 (1984), for evaluating claims of ineffective assistance of counsel—requiring that the defendant show that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different—applies to guilty-plea challenges based on ineffective assistance of counsel. *See Hill*, 474 U.S. at 57 (quoting *Strickland*, 466 U.S. at 694). In order to satisfy the second, or "prejudice," requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id.* at 59. *Hill* goes on to say:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the
> inquiry engaged in by courts reviewing ineffective-assistance challenges to

8

convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. **This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.**

*Id.* (emphasis added).

In *Segura*, a defendant who pled guilty to dealing in cocaine sought post-conviction relief, alleging that his trial counsel was ineffective for failing to advise him that deportation was a possible consequence of a guilty plea. *See Segura*, 749 N.E.2d at 498. In that case, the Indiana Supreme Court set forth a distinction between prejudice resulting from failure to advise the defendant on an issue that impairs or overlooks a defense, and prejudice resulting from an incorrect advisement of penal consequences. *See id.* at 499. Here, Young asserts that his counsel was ineffective for failing to question the validity of the 1000 foot enhancement used in the charging information, which led to the Class A felony charge; had he not been faced with a potential fifty-year sentence, Young continues, he would not have pled guilty. Thus, Young is claiming prejudice from an error or omission overlooking a defense.

The specific standard for showing prejudice on such a claim was articulated by our Supreme Court in *Segura*:

We conclude that *Hill* standing alone requires **a showing of a reasonable probability of success at trial if the alleged error is one that would have affected a defense.** This result seems preferable for several reasons. In *Van Cleave*, [674 N.E.2d 1293 (Ind. 1996),] we identified sound reasons for requiring that a petitioner who pleads guilty show a reasonable probability of acquittal in order to prevail in a postconviction attack on the conviction based on a claim of ineffective assistance of counsel. As *Hill* emphasized,

9

the State has an interest in the finality of guilty pleas. This is in part grounded in the cost of a new trial, and the demands on judicial resources that are imposed by revisiting the guilty plea, but also in concerns about the toll a retrial exacts from victims and witnesses who are required to revisit the crime years later.

*Id.* at at 503 (emphasis added) (citing *Hill*, 474 U.S. at 58); *see also State v. Van Cleave*, 674 N.E.2d 1293 (Ind. 1996), *reh'g granted on other grounds*, 681 N.E.2d 181 (Ind. 1997)). Thus, in *Segura*, our Supreme Court adopted the *Hill* standard for showing prejudice from ineffective assistance of counsel in a guilty-plea case where the alleged prejudice results from an error or omission that overlooked or impaired a defense: a showing of a reasonable probability of success at trial.[2] *See id.*

Here, the post-conviction court properly relied on *Segura*, but employed the wrong standard from that case, requiring Young to establish, by objective facts, circumstances supporting the conclusion that counsel's errors in advice as to penal consequences were material to the decision to plead and that competent representation would have caused the petitioner not to plead. *See id.* at 507; *see also* Appellant's App. p. 151. But because Young contends that Attorney Green failed to investigate and challenge the 1000-foot enhancement, he is claiming prejudice resulting from an error or omission that overlooked or impaired a defense; therefore, according to the proper standard, Young must show a

---

[2] As observed by this Court in *Manzano v. State*, 12 N.E.3d 321, 326 n.1 (Ind. Ct. App. 2014), *trans. denied*, the Seventh Circuit rejected the *Segura* holding and concluded that our Supreme Court misinterpreted the United States Supreme Court's holding in *Hill*, 474 U.S. 52. *See Payne v. Brown*, 662 F.3d 825, 828 (7th Cir. 2011). The Seventh Circuit concluded that *Hill* "holds that a person who contends that ineffective assistance of counsel induced him to pled guilty establishes 'prejudice' by demonstrating that, but for counsel's errors, he would have insisted on a trial." *Id.* But because the Seventh Circuit's "decisions on questions of federal law are not binding on state courts," *see Jackson v. State*, 830 N.E.2d 920, 921 (Ind. Ct. App. 2005), we apply the standard established by our supreme court in *Segura.*

reasonable probability of success at trial. *See id.* at 503; *see also Hill*, 474 U.S. 52. We find that Young has failed to meet this standard.

On appeal, Young argues that without knowledge of subsidized housing within 1000 feet of the drug deal, the State would not have secured a conviction on the Class A felony as it was charged, and had Attorney Green known of the mistake, he might have been able to negotiate a better plea agreement. Appellant's Br. p. 11. Yet Deputy Prosecutor Bober testified that had this case proceeded to trial, he would have recognized the "scrivener's error" and moved to amend the information to add the youth program center at St. Matthew Lutheran Church, making it consistent with the probable-cause affidavit.[3] P-C Tr. p. 33-34. And although defense witness Harwell testified as to the lack of a youth program center at that particular church, Deputy Prosecutor Bober testified: "I believe there is not a single location in that area that is not within a thousand feet of a youth program center." *Id.* at 37. Young did not offer any evidence to dispute this assertion.

We find, therefore, that Young has not met his burden of showing that he was prejudiced by Attorney Green's failure to question the validity of that 1000-foot enhancement location because he cannot show a reasonable probability of success at trial but for Attorney Green's error. *See Segura*, 749 N.E.2d at 503; *see also Hill*, 474 U.S. at 58. And according to *Strickland*, if we can dismiss an ineffective-assistance claim on the

---

[3] In Young's reply brief, he argues for the first time that *if* the case had gone to trial and *if* during trial the State had discovered that St. Matthew Lutheran Church was not a qualifying youth program center, the trial court (arguably) would not have permitted the State to amend its information again – "regardless of whether there was a 'plethora' of qualifying locations to choose from" – because Young's substantial rights would have been violated by the amendment. Appellant's Reply Br. p. 4 (citing *Nunley v. State*, 995 N.E.2d 718, 723 (Ind. Ct. App. 2013), *reh'g denied*); *see also* Ind. Code § 35-34-1-5(a). But because this argument is premised on entirely hypothetical scenarios rather than what actually occurred, we need not address this argument today.

prejudice prong, we need not address whether counsel's performance was deficient. *See Strickland*, 466 U.S. at 697 (("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."). Because we find that Young has made an insufficient showing of prejudice, we find that he has likewise failed to show that he received ineffective assistance of counsel.

Next, Young argues that his guilty plea was illusory because he accepted the plea bargain under the misconception that he could be convicted of a Class A felony. A plea bargain motivated by an improper threat is deemed illusory and a denial of substantive rights. *Graham v. State*, 941 N.E.2d 1091 (Ind. Ct. App. 2011). The State must possess, at the moment a guilty plea is entered, the power to carry out any threat that was a factor in obtaining the plea agreement. *Id.* at 1100-01. "[A] threat by a prosecutor to do what the law will not permit, if it motivates a defendant ignorant of the impossibility, renders the plea involuntary." *Id.* at 1101 (quoting *Lassiter v. Turner*, 423 F.2d 897, 900 (4th Cir. 1970)). "Defendants who can show that they were coerced or misled into pleading guilty by the judge, prosecutor or defense counsel will present colorable claims for relief." *Cornelious v. State*, 846 N.E.2d 354, 357-58 (Ind. Ct. App. 2006), *trans. denied*.

In *Graham v. State*, a petitioner argued that his guilty plea to Class B felony dealing in a narcotic drug under Indiana Code section 35-48-4-1 was illusory and involuntary because it was motivated by the improper threat of a thirty-year habitual offender enhancement to his sentence if he did not plead guilty. *See Graham*, 941 N.E.2d 1091,

12

1100 (Ind. Ct. App. 2011). In that case, however, the State was prohibited by statute from seeking a sentence enhancement for an offense under Indiana Code section 35-48-4, since the offense was not one listed in Indiana Code section 35-50-2-2(b)(4) and Graham did not have more than one prior conviction for dealing in cocaine, a legend or narcotic drug, or a schedule I, II, III, IV, or V controlled substance. *See* Ind. Code § 35-50-2-8(b)(3). Thus there was "no question that the State's threat of a general habitual offender enhancement of Graham's sentence was not capable of being fulfilled." *See Graham*, 941 N.E.2d at 1101.

But here, as discussed above, Young did not prove that he could *not* have been charged with a Class A felony. First, there is no reason to believe the State would not have been able to correct the scrivener's error in preparation for trial; moreover, even if Young had proven that there was no youth program at St. Matthew Lutheran Church, Deputy Prosecutor Bober testified as to his belief that "there is not a single location in that area that is not within a thousand feet of a youth program center" and Young did not dispute that contention. P-C Tr. p. 37. In light of the overwhelming evidence of Young's guilt and his extensive criminal history, there is no reason to believe that Young would have been offered a better plea agreement or would have had any reasonable probability of success at trial.[4] Indeed, according to the facts of this case, we are convinced that not only would

---

[4] Young pled guilty to a Class B felony carrying a penalty range of six to twenty years, with ten years being the advisory sentence. *See* Ind. Code § 35-50-2-5(a) ("A person who commits a Class B felony (for a crime committed before July 1, 2014) shall be imprisoned for a fixed term of between six [] and twenty [] years, with the advisory sentence being ten [] years."). The sentencing court first took note of Young's extensive criminal and delinquent history, and the fact that he was on probation at the time of this offense; the court then stated that in mitigation Young was accepting responsibility by pleading guilty, but that the weight to be given to that was attenuated because the offense had been reduced from a Class A to

Young have wished to avoid trial, he could have expected nothing substantially better than his sentence under the plea bargain, with a high degree of exposure to a much harsher sentence had he gone to trial facing a Class A felony. *See Willoughby v. State*, 792 N.E.2d 560, 565 (Ind. Ct. App. 2003), *trans. denied*. Because Young has not proven that the Class A felony charge rose to the level of an "improper threat," we need not consider its impact on Young's decision to plead guilty. *See Graham*, 941 N.E.2d at 1101 (citing *Nash v. State*, 429 N.E.2d 666, 672 (Ind. Ct. App. 1981), in which this Court indicated that if the improper threat "played a significant part in the plea negotiations," then any resulting plea is illusory). In sum, Young has failed to prove that his guilty plea was illusory.

Affirmed.

BAKER, J., and RILEY, J., concur.

---

a Class B felony. Young received a sentence of twelve years at the Department of Correction. *See* Sent. Tr. p. 11.