## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 06 2020, 8:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin R. Wall
Wall Legal Services
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Louis H. Howard, Jr.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff,*

November 6, 2020

Court of Appeals Case No.
19A-CR-3063

Appeal from the Wells Superior Court

The Honorable Kenton W. Kiracofe, Special Judge

Trial Court Cause No.
90D01-1901-F6-20

**Robb, Judge.**

# Case Summary and Issues

[1] After a jury trial, Louis Howard was convicted of possession of cocaine, a Level 6 felony; obstruction of justice, a Level 6 felony; possession of marijuana, a Class A misdemeanor; and was found to be an habitual offender. Howard received a sentence of eight and one-half years. Howard appeals, raising several issues which we restate as: (1) whether the trial court abused its discretion by denying Howard's motion to dismiss the habitual offender enhancement; (2) whether the trial court abused its discretion by denying Howard's motion to continue his trial based on a late amendment to the habitual offender enhancement; (3) whether the trial court erred in refusing to allow Howard to plead guilty when he was unrepresented by counsel; and (4) whether the trial court abused its discretion by denying Howard's motion to disqualify Prosecutor Andrew Carnall.

[2] We conclude the trial court did not abuse its discretion by denying Howard's motion to dismiss, motion to continue, or motion to disqualify and did not err when precluding Howard from pleading guilty without counsel. Accordingly, these issues are affirmed.

# Facts and Procedural History

[3] On January 27, 2019, Howard had an active warrant out for his arrest. Detective Marjean Tipton of the Bluffton Police Department received an anonymous tip that Howard was staying at the home of Shirley Patrick. Acting

on this tip, Detective Tipton and other officers proceeded to the address provided to them and knocked on the door. Patrick cooperated with Detective Tipton and allowed her home to be searched for Howard. Howard was found in a bedroom in the back of the house, handcuffed, and placed under arrest.

[4] As Detective Tipton was transporting Howard to the jail, she noticed that he smelled like burnt marijuana. When Howard arrived at the jail, a pat down search was conducted which produced a bundle of plastic baggies that contained a green leaf-like substance that smelled like raw marijuana. Howard was then escorted to the bathroom for a strip search. Howard was uncooperative but a correctional officer observed what he believed to be a plastic baggie concealed within Howard's anus. Howard was then transported to the Bluffton Regional Medical Center for a body cavity search. Once at the hospital, and inside a room, Howard lowered his head towards his hands and officers observed a plastic baggie in his mouth. Officers attempted to grab the baggie out of Howard's mouth but were only able to remove a piece before Howard swallowed the baggie. The piece of baggie that officers were able to get out of Howard's mouth tested positive for cocaine. Howard later began experiencing symptoms of a drug overdose and had to be treated. Howard was subsequently charged with possession of cocaine, possession of marijuana, and obstruction of justice.

[5] On January 28, 2019, Howard had an initial hearing where he was read the charging information and given notice of the State's intent to seek an enhanced penalty for the possession of marijuana charge based upon a prior conviction.

Howard was assigned a public defender. Later that day, the State filed its notice of intent to seek habitual offender status, which had not been read to Howard at the initial hearing. This original Habitual Offender Enhancement listed four prior unrelated felony convictions upon which the enhancement was based and stated it was filed under Indiana Code section 35-50-2-8(b).

[6]     On May 31, 2019, Howard appeared at a pre-trial conference without counsel because Howard's public defender had filed a motion to withdraw which was granted.  The pre-trial conference was held, in part, to appoint Howard a new attorney. At the pre-trial conference, Howard attempted to plead guilty to the three charges but not to the Habitual Offender Enhancement. The trial court responded by advising Howard that he could not plead guilty "if you're represented by an attorney without consulting an attorney" and that he was not permitted to "just pick and choose what you plead guilty to[.]" Transcript, Volume 2 at 36. Howard indicated that he wanted to be represented and asked the trial court to appoint him new counsel.

[7]     Howard's jury trial was set for October 30, 2019. On October 10, 2019, the State amended the Habitual Offender Enhancement for the first time by filing an Amended Notice of Intent to Have Defendant Sentenced as an Habitual Offender Under IC 35-50-2-8(b) ("First Amended Habitual Offender Enhancement") that removed one of the prior unrelated felonies listed. Appellant's Appendix, Volume II at 104.

[8] At the final pre-trial hearing on October 16, 2019, Howard made an oral motion to dismiss the State's First Amended Habitual Offender Enhancement, which he later renewed in writing at the direction of the trial court. Howard previewed his argument, noting he had never been given an initial hearing on the originally filed Habitual Offender Enhancement, the Habitual Offender Enhancement was filed under the wrong statutory provision, and the amendment was not timely. Howard also moved for a continuance because the amendment of the Habitual Offender Enhancement occurred less than thirty days prior to his trial date. The trial court denied the motion to continue. After hearing Howard's argument, the State orally moved to amend the First Amended Habitual Offender Enhancement and change the controlling statute from Indiana Code section 35-50-2-8(b) to Indiana Code section 35-50-2-8(d), which the trial court granted. The State later formally filed the Second Amended Notice of Intent to Have Defendant Sentenced as an Habitual Offender Under IC 35-50-2-8(d) ("Second Amended Habitual Offender Enhancement"). *Id.* at 113. Howard renewed his motion to continue which the trial court again denied.

[9] The trial court held a hearing on Howard's written motion to dismiss on October 28, 2019. Howard made the same arguments he had previewed on October 16 and also included an argument that he should have been allowed to plead guilty at the pre-trial conference because he was not given an initial hearing on the Habitual Offender Enhancement. The trial court denied Howard's motions, determining that because Howard had expressed a desire to

be represented by counsel, it could not have accepted a guilty plea from him at that time and that Howard's previous attorney had told him the Habitual Offender Enhancement was on file. *See* Tr., Vol. 2 at 101.

[10] The matter proceeded to jury trial. The original prosecutor, Christopher Harvey, presented evidence on behalf of the State on the first day; however, on the second day of trial, Harvey became ill and Andrew Carnall appeared to finish the trial. Howard objected to Carnall taking over responsibilities for the case because Carnall had represented Howard as a defense attorney in private practice in 1996. The trial court determined there was no conflict and concluded that Carnall could proceed in his representation of the State.

[11] The jury found Howard to be guilty as charged and to be an habitual offender. The trial court then sentenced Howard to two and one-half years in the Indiana Department of Correction. Howard's sentence was enhanced by six years for his status as an habitual offender. Howard now appeals.

# Discussion and Decision

## I. Habitual Offender Enhancement

### A. Motion to Dismiss

[12] Howard argues that the trial court erred by denying his motion to dismiss the Habitual Offender Enhancement. Indiana Code section 35-34-1-4(a) states that the court may, upon motion of the defendant, dismiss an indictment or information. We review a trial court's denial of a motion to dismiss for an

abuse of discretion. *Delagrange v. State*, 951 N.E.2d 593, 594 (Ind. Ct. App. 2011), *trans. denied*. In reviewing a trial court's decision for an abuse of discretion, we reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

[13] Similarly, we review a trial court's decision on whether to permit an amendment to a charging information for an abuse of discretion. *See Keller v. State*, 987 N.E.2d 1099, 1109 (Ind. Ct. App. 2013), *trans. denied.* The defendant bears the burden of proof to show that an amendment prejudices their substantial rights. *Prewitt v. State*, 761 N.E.2d 862, 868 (Ind. Ct. App. 2002). To the extent that this issue requires us to interpret a statute, we apply a de novo standard of review to matters of statutory interpretation. *In re Bi.B.*, 69 N.E.3d 464, 466 (Ind. 2017).

[14] First, Howard argues that the trial court erred by denying his motion to dismiss because he was not afforded a timely initial hearing on the Habitual Offender Enhancement. Procedural safeguards that apply to other criminal charges apply to habitual offender allegations, including the right to an initial hearing. Ind. Code § 35-50-2-8(l). However, failure to hold an initial hearing on an habitual offender enhancement is not reversible error unless it results in prejudice. *Shelton v. State,* 490 N.E.2d 738, 744 (Ind. 1986). A defendant is not prejudiced when they have notice prior to trial. *See id.* And even if a defendant does not have actual knowledge of the habitual offender charge, they are not necessarily prejudiced if their counsel has knowledge of the habitual offender count. *Lampkins v. State,* 682 N.E.2d 1268, 1274 (Ind. 1997).

[15] Howard concedes that "he had some knowledge of the [Habitual Offender Enhancement], or at least his first counsel" did. Appellant's Brief at 23. Howard further states that "pursuant to *Shelton* and *Lampkin*, [he] cannot demonstrate prejudice if he, or his counsel, had actual knowledge of the [Habitual Offender Enhancement]." *Id.* Because Howard concedes he had actual knowledge of the Habitual Offender Enhancement he was not prejudiced by the trial court's failure to hold an initial hearing. *Shelton,* 490 N.E.2d at 744. Howard was thus not entitled to dismissal of the Habitual Offender Enhancement on this ground.

[16] Next, Howard argues that the trial court erred in denying his motion to dismiss because the State's Second Amended Habitual Offender Enhancement, which changed the basis of the enhancement from Indiana Code section 35-50-2-8(b) to Indiana Code section 35-50-2-8(d), was an impermissible amendment that substantially prejudiced his rights.[1] Although the habitual offender charge is not a separate "offense" under Indiana law, our supreme court has held that it is subject to the rules governing charging of criminal offenses, such as Indiana Code section 35-34-1-5. *Murphy v. State,* 499 N.E.2d 1077, 1083 (Ind. 1986). Indiana Code section 35-34-1-5(a) allows prosecuting attorneys to move to amend "immaterial defects" of an indictment or information at any time.

---

[1] Howard concedes that the State's first amendment to the Habitual Offender Enhancement, removing one of the four underlying felonies, was permissible pursuant to the holding in *Wheeler v. State*, 95 N.E.3d 149 (Ind. Ct. App. 2018). *See* Appellant's Br. at 27.

[17] The State's second amendment changed the caption to reflect that the statutory authority for the Habitual Offender Enhancement was Indiana Code section 35-50-2-8(d) instead of section 35-50-2-8(b). These subsections provide different requirements for habitual offender enhancements. Indiana Code section 35-50-2-8(b) describes the circumstances under which a person convicted of murder or a Level 1 through Level 4 felony is an habitual offender. That subsection was not applicable to Howard as the most serious offense he was charged with was a Level 6 felony. Indiana Code section 35-50-2-8(d), however, describes when a person convicted of any felony is an habitual offender and is the subsection applicable to Howard.

[18] This amendment falls within one of the examples Indiana Code section 35-34-1-5(a) gives of an immaterial defect. Specifically, Indiana Code section 35-34-1-5(a)(6) which states that a "mistake in the name of . . . the statutory provision alleged to have been violated" is an immaterial defect that the prosecution can seek to change at any time. *See Didio v. State*, 471 N.E.2d 1117, 1120 (Ind. 1984) (holding that changing "neither the factual allegations nor the characterization of the offense but merely correct[ing] an erroneous statutory citation" was permissible).

[19] Even if this amendment did not fall within Indiana Code section 35-34-1-5(a), it was permissible because it did not prejudice Howard's substantial rights. Both amendments of form and substance are allowed prior to trial as long as they do

not prejudice the substantial rights of a defendant.[2] Ind. Code § 35-34-1-5(b), (c). A defendant's substantial rights include "a right to sufficient notice and an opportunity to be heard regarding the charge[.]" *Gomez v. State*, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009) (quotation omitted), *trans. denied.* If an amendment does not affect "any particular defense or change the positions of either of the parties," the defendant's substantial rights are not violated. *Id.*

[20] In determining whether a defendant's substantial rights were prejudiced, "[u]ltimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges." *Nunley v. State*, 995 N.E.2d 718, 723 (Ind. Ct. App. 2013) (quoting *Gomez*, 907 N.E.2d at 611), *trans. denied.* We have previously held that an amendment to the predicate offenses alleged in an habitual offender enhancement, with little notice, was a substantive amendment. *See State v. McFarland*, 134 N.E.3d 1027, 1031 (Ind. Ct. App. 2019), *trans. denied.*; *Nunley*, 995 N.E.2d at 722. In *McFarland,* the State proposed to replace a prior misdemeanor theft conviction with a felony conviction for carrying a handgun without a license less than two business hours before trial. We held that the State "did not provide adequate notice" and left the defendant no time to prepare for the habitual offender portion of the

---

[2] Indiana Code section 35-34-1-5(b) states that the indictment or information may be amended in matters of substance upon giving written notice to the defendant at any time before the commencement of trial if the amendment does not prejudice the substantial rights of the defendant. Indiana Code section 35-34-1-5(c) permits an amendment to the indictment or information in form at any time before, during, or after the trial as long as it does not prejudice the substantial rights of the defendant. Because the amendment here took place prior to trial we need not determine whether the amendment was one of form or substance, only that it did not prejudice the substantial rights of Howard.

trial. *McFarland,* 134 N.E.3d at 1033. The amendment also took away the defendant's defense that one of the two listed prior offenses was not a valid predicate offense because it was a misdemeanor. Similarly, in *Nunley,* the trial court allowed the State to substitute two valid predicate offenses for an invalid one the day after the jury was empaneled but continued the trial for six days "so that [the defendant] could prepare his defense." *Nunley*, 995 N.E.2d at 722. We held that this amendment violated the defendant's substantial rights because no part of Indiana Code section 35-34-1-5 allowed the amendment: the amendment was not to correct an immaterial defect and it prejudiced the defendant's substantial rights because it was essential to the habitual offender allegation and the defendant's defense to the original allegation evaporated under the amendment. *Id.* at 723-24.

[21] However, as described above, both *Nunley* and *McFarland* dealt with amendments to the predicate offenses alleged as the basis for the habitual offender enhancement at the last moment. The present case differs from those two cases because here, the State did not attempt to change the underlying convictions being used for the habitual offender enhancement but only changed the statutory cite to conform to the allegations. Further, this amendment occurred two weeks before the jury trial date and Howard was aware of the mistake and brought it to the trial court's attention at the final pre-trial hearing prior to the State's second amendment. *See* Tr., Vol. 2 at 62.

[22] Howard contends that his rights were substantially prejudiced because this change "dramatically changes the defense that Howard would be able to

present at trial[.]" Appellant's Br. at 28. Stating that under Indiana Code section 35-50-2-8(b) the State "would have had to prove that Howard was being charged with Murder, or a Level 1-4 felony," Howard notes he was only charged with Level 6 felonies and a misdemeanor and he therefore would "have had a very clear and obvious defense at trial[.]" *Id.* However, we find this argument unpersuasive because Howard "had a reasonable opportunity to prepare for and defend" against this amendment. *Gomez*, 907 N.E.2d at 611.

[23] Here, the State did not amend one of the underlying felony convictions of the First Amended Habitual Offender Enhancement. It amended the caption to reflect the statutory subsection applicable to Howard's charges and potential conviction. The First Amended Habitual Offender Enhancement complied with the requirements of Indiana Code section 35-50-2-8(d) even though it cited Indiana Code section 35-50-2-8(b). Further, this amendment occurred two weeks prior to Howard's trial giving him ample time to prepare. Therefore, Howard's substantial rights were not prejudiced, and the trial court did not abuse its discretion by denying Howard's motion to dismiss.

## B. Motion to Continue

[24] Where a motion to continue is filed on non-statutory grounds or fails to meet the statutory requirements we review the trial court's decision to grant or deny for an abuse of discretion. *Tharpe v. State*, 955 N.E.2d 836, 843 (Ind. Ct. App. 2011), *trans. denied.* An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court or

where the record demonstrates prejudice to the defendant from a denial of the continuance. *Id.* Continuances to allow additional time for preparation are generally disfavored in criminal cases. *Id.*

Howard argues that the trial court abused its discretion by denying his motion to continue because the State's amendment to the First Amended Habitual Offender Enhancement substantially prejudiced Howard's rights. We concluded above that the State's amendment changing the caption of the First Amended Habitual Offender Enhancement from Indiana Code section 35-50-2-8(b) to Indiana Code section 35-50-2-8(d) did not substantially prejudice Howard's rights. Therefore, we conclude the trial court did not abuse its discretion by denying Howard's motion to continue.

## II. Guilty Plea at Pre-Trial Conference Hearing

Howard argues that he should have been allowed to plead guilty because he was acting in a pro se capacity. Howard further argues that he should have been allowed to plead guilty to all the charges except the Habitual Offender Enhancement because the Habitual Offender Enhancement was invalid. According to Indiana Code section 35-35-1-1, a "plea of guilty . . . shall not be accepted from a defendant unrepresented by counsel who has not freely and knowingly waived his right to counsel."

It is well established that there is a strong presumption against the waiver of the right to counsel, and it is the trial court that bears the "serious and weighty responsibility . . . to determine whether there was an intelligent and competent

waiver. . . . To discharge the duty imposed, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand." *Eaton v. State*, 894 N.E.2d 213, 217 (Ind. Ct. App. 2008) (quoting *Mitchell v. State*, 417 N.E.2d 364, 369 (Ind. Ct. App. 1981)) (internal citations omitted), *trans. denied.* The trial court is in the best position to assess whether the defendant has made a knowing and intelligent waiver, and the trial court's finding will most likely be upheld "where the judge has made the proper inquiries and conveyed the proper information, and reaches a reasoned conclusion." *Poynter v. State*, 749 N.E.2d 1122, 1128 (Ind. 2001) (citations omitted). Nevertheless, the trial court's conclusion whether the defendant knowingly and voluntarily waived the right to counsel is reviewed de novo. *Miller v. State,* 789 N.E.2d 32, 37 (Ind. Ct. App. 2003) (citing *Balfour v. State,* 779 N.E.2d 1211, 1216 (Ind. Ct. App. 2002)).

[28] Here, Howard's original attorney withdrew, and a pre-trial conference was conducted, in part, to appoint new counsel to represent Howard. During the pre-trial conference Howard attempted to plead guilty to all his charges, except the Habitual Offender Enhancement. The trial court informed him that he was not able to plead guilty "if [he was] represented by an attorney without consulting with an attorney" and that he could not "pick and choose what [he] plead[s] guilty to[.]" Tr., Vol. 2 at 36. Howard argues that at the time of the hearing he was acting pro se and should have been allowed to plead guilty. However, at the hearing the trial court stated that Howard had "previously said [he] wanted to be appointed an attorney" to which Howard responded "[y]es."

*Id.* at 35. And when asked again if he wanted counsel appointed for him, he stated that he did. *See id.* at 37. The trial court then appointed new counsel.

[29]     We conclude that prior to his attempt to plead guilty, Howard had not made a knowing and intelligent waiver of his right to counsel and therefore he was precluded from pleading guilty. *See* Ind. Code § 35-35-1-1. Because Howard did not waive his right to counsel, we need not address whether he should have been permitted to plead guilty to only his three charges but not the Habitual Offender Enhancement.[3]

## III.  Motion to Disqualify Prosecuting Attorney

[30]     Howard argues that Andrew Carnall, and by extension the entire Wells County Prosecutor's Office, should have been disqualified because Carnall had previously represented Howard while in private practice. Howard did not make a formal motion, but we will treat his objection as a motion to disqualify. *See* Tr., Vol. 3 at 129.  Howard's claim that the entire Wells County Prosecutor's Office should be disqualified was brought for the first time on appeal and is therefore waived. *See Whitfield v. State,* 699 N.E.2d 666, 669 (Ind. Ct. App. 1998) (stating an argument raised for the first time on appeal will not be

---

[3] Howard argues that his motion to dismiss the Habitual Offender Enhancement should have been granted because the lack of a proper initial hearing precluded him from pleading guilty at the pre-trial conference and prejudiced him. Howard contends that "[he] may have pled the matter out, or at least potentially accepted the idea that at the May 31, 2019 hearing, the [Habitual Offender Enhancement] was properly before the [c]ourt and Howard would have accepted this fact and pled guilty." Appellant's Br. at 30. However, because we find here that Howard had not waived his right to counsel, this argument is moot. Howard would not have been permitted to plead guilty at the pre-trial conference regardless of whether he had an initial hearing for the Habitual Offender Enhancement or not.

considered), *trans. denied.* We will only address whether Carnall should have been disqualified.

[31] "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent[.]" Ind. Professional Conduct Rule 1.9. A trial court may disqualify an attorney for a violation of the Rules of Professional Conduct that arises from the attorney's representation before the court. *Cincinnati Ins. Co. v. Wills,* 717 N.E.2d 151, 154 (Ind. 1999). We review a trial court's decision regarding disqualification for an abuse of discretion. *Kindred v. Ind. Dep't. of Child Servs.*, 136 N.E.3d 284, 292 (Ind. Ct. App. 2019), *trans. denied.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or if it has misinterpreted the law. *Reed v. Hoosier Health Sys., Inc.,* 825 N.E.2d 408, 411 (Ind. Ct. App. 2005).

[32] A government employee generally may not "participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment[.]" Prof. Cond. R. 1.11(d)(2)(i). In criminal cases, however, while acknowledging the importance of the "precepts of professional ethics[,]" *Williams v. State,* 631 N.E.2d 485, 487 (Ind. 1994) (quotation omitted), the Indiana Supreme Court has applied an analysis distinct from that used in attorney disqualification questions in civil cases. *Johnson v. State,* 675 N.E.2d 678, 682 (Ind. 1996).

[33] The key inquiries are (1) "whether the issues in the prior and present case are essentially the same or are closely interwoven therewith," (2) "whether the prosecutor has received confidential information in the prior representation," and (3) "more importantly, whether the information may have subsequently assisted the prosecution." *Johnson*, 675 N.E.2d at 682; *see Garren v. State,* 470 N.E.2d 719, 723 (Ind. 1984) (holding prosecutor need not be disqualified where defendant "failed to show that the [p]rosecutor obtained information from him in confidence which was relevant to the facts of the [case at bar]").

[34] We have held that it is the defendant's burden to show both that a "prosecutor received confidential information" and that "prejudice actually . . . resulted" from the use of confidential information. *Williams,* 631 N.E.2d at 487. Here, we find that Howard has failed to meet this burden.

[35] Howard concedes that the case Carnall represented him in "factually, has nothing related to his present case." Appellant's Br. at 35. Howard contends, however, that the past representation is substantially related to the present matter because his conviction in cause number 90C01-9603-CF-90 – in which Carnall represented him – was subsequently used to enhance a conviction out of Huntington County in cause number 35D01-0805-FD-82. That Huntington County conviction was then included in the State's original Habitual Offender Enhancement before being removed in the first amendment. *See* Appellant's App., Vol. II at 69. Further, Howard states that Carnall would have "garnered

private, confidential information pertaining to Howard as is normally established in the attorney-client relationship." Appellant's Br. at 35.

[36] However, Howard is unable to show that "prejudice actually . . . resulted." *Williams*, 631 N.E.2d at 487. The Huntington County conviction was included in the original Habitual Offender Enhancement but not in the First Amended Habitual Offender Enhancement or Second Amended Habitual Offender Enhancement. The case in which Carnall represented Howard was therefore not relevant to the habitual offender allegation as tried in any way. Carnall's representation of Howard also occurred more than twenty years ago and is not substantially related to the current matter. Because of this, we hold that Howard was not actually prejudiced by Carnall prosecuting him and the trial court did not abuse its discretion when it denied Howard's motion to disqualify Carnall.

# Conclusion

[37] The trial court did not abuse its discretion by denying Howard's motion to dismiss, motion to continue, or motion to disqualify. We also conclude that prior to his attempt to plead guilty Howard had not made a knowing and intelligent waiver of his right to counsel and therefore he was precluded from pleading guilty. Accordingly, we affirm.

[38] Affirmed.

May, J., and Vaidik, J., concur.