**Irvin JONES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0108–CR–531.

Court of Appeals of Indiana.

April 30, 2002.

---

Joel M. Schumm, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cecelia K. Hemphill, Deputy At-

torney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

After a bench trial, Irvin Jones was found guilty of promoting prostitution,[1] a Class C felony. He now appeals, raising the following issues for review:

I. Whether the trial court erred in allowing the State to amend the charging information on the morning of trial by deleting one of two alternate allegations of promoting prostitution and in denying Jones's motion for continuance based on the amendment.

II. Whether the State presented sufficient evidence that Jones promoted prostitution by "procuring" a prostitute.

III. Whether Jones's sentence of five years' imprisonment violates the Proportionality Clause of the Indiana constitution where the maximum sentence for prostitution is one year.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On January 8, 2001, Detective Mark Campbell, dressed in plain clothes and accompanied by a confidential informant, went to a secured apartment building. He pressed the button for Jones's apartment. Jones answered the door, and as he conducted the men towards his apartment, he asked them what they wanted. Campbell responded that he was looking for girls.

After they entered the apartment, Jones responded that he had one and pointed to Jana Fox, who was sitting at a table.

Jones explained that Fox was "expensive" and directed her to lift her shirt for Campbell. *Transcript* at 27. She stood up and turned around with her shirt raised. Jones told Campbell that Campbell could use his room all night long but that he had to get paid "off the top." *Id.* Campbell gave Jones twenty dollars. Jones told Campbell to tell Fox what he wanted. When Campbell explained that he needed a condom, Jones stated that he sold condoms. Campbell stated that he would get his own. Other officers then moved in and arrested Jones.

On January 9, 2001, Jones was charged with promoting prostitution. The information alleged that Jones promoted prostitution by procuring Fox for the purpose of prostitution with Campbell and by permitting Campbell to use his apartment for prostitution.

On June 20, 2001, the morning of trial, the State moved to amend the information by deleting the allegation that Jones allowed Campbell to use his apartment for prostitution. The trial court allowed the amendment and denied Jones's motion for continuance based on the effect of the amendment on his proposed defense.

At the conclusion of the trial, the trial court found Jones guilty of promoting prostitution. It sentenced him to an enhanced sentence of five years' imprisonment. Jones now appeals.

## DISCUSSION AND DECISION

Jones first contends that the trial court erred in permitting the State to amend the charging information on the morning of trial. In the alternative, Jones argues that the trial court erred in denying his motion for a continuance to prepare a new defense based on the amendment.

1. *See* IC 35-45-4-4.

In criminal prosecutions, the charging information exists to guarantee the accused certain protections. *Tripp v. State,* 729 N.E.2d 1061, 1064 (Ind.Ct.App. 2000). The charging information must state with particularity the date and location of the alleged offense as well as set forth the specific name of that offense, a citation to the statutory provision alleged to have been violated, and the elements of the offense charged. *Id.* The purposes of the information are to apprise the accused of the nature of the accusation made so that preparations for mounting a defense can be made and to provide a basis for a double jeopardy defense in the event of a subsequent prosecution. *Id.*

IC 35–34–1–5(a) provides that an amendment may be made at any time to correct an immaterial defect in the information. Included in the statutory list of such defects is the presence of any unnecessary repugnant allegation, IC 35–34–1–5(a)(3), the use of alternative or disjunctive allegations as to the acts, means, intents, or results charged, IC 35–34–1–5(a)(5), and "any other defect which does not prejudice the substantial rights of the defendant." IC 35–34–1–5(a)(9).

Accordingly, the court may permit the State to amend an indictment or information at any time before, during, or after the trial as to any defect, imperfection, or omission in a form that does not prejudice the substantial rights of the defendant. *Brown v. State,* 728 N.E.2d 876, 879 (Ind.2000); *Wilkinson v. State,* 670 N.E.2d 47, 48 (Ind.Ct.App.1996), *trans. denied* (quoting IC 35–34–1–5(c)). *See Haak v. State,* 695 N.E.2d 944, 951–52 (Ind.1998) (Amendments of "immaterial defect" or "form" may be made at any time if there is no prejudice to the defendant.). An amendment is one of form and not substance if a defense under the original information would be equally available after the amendment and the accused's evidence would apply equally to the information in either form. *Brown,* 728 N.E.2d at 879–80; *Wilkinson,* 670 N.E.2d at 48. An amendment is one of substance only if it is essential to the making of a valid charge of the crime. *Haak,* 695 N.E.2d at 951–52. If the amendment does not affect any particular defense or change the positions of either of the parties, then it does not prejudice the defendant's substantial rights. *Brown,* 728 N.E.2d at 880. However, the prosecution may not amend the charging information in a manner which materially changes the factual allegations which form the basis of the prosecution's theory. *Wilkinson,* 670 N.E.2d at 48.

In *Haak,* 695 N.E.2d at 951–52, the court examined the claim that a trial court erred in allowing the State to amend its information. The court focused its analysis on whether the change surprised the defendant or rendered him unprepared to go to trial. Ultimately, because the amendment only reduced the possible grounds on which the jury could find the defendant guilty, the court held that there was no unfair surprise. The amendment did not cause the defendant to lose any defenses or affect the application of his evidence to the crimes charged, and it was not essential to the making of the criminal charge. Therefore, the court concluded that the change was not of substance, and the amendment was permissible at any time if not prejudicial to the defendant. *Id.*

Here, the State's amendment deleted one of two alternate bases for Jones's liability under the statute. Under the original charge, the State sought a conviction either for Jones's conduct in procuring Fox for prostitution or for using his apartment for prostitution. After the amendment, Jones faced liability only on the basis of procuring Fox. Thus, the amend-

ment did not affect the availability of Jones's defense or the applicability of evidence which existed under the original information. Accordingly, his substantial rights were not violated by the amendment.

■ Nonetheless, Jones argues that the trial court erred in denying his motion for a continuance under the circumstances. However, as we explained in *Wilkinson,* 670 N.E.2d at 48, the ruling on a motion for a continuance also hinges on whether the amendment necessitates a change in the defendant's defense. There, the defendant challenged the denial of his motion to continue after the prosecutor amended the charge against him from the original charge of child molesting to a charge of attempted child molesting. In rejecting the defendant's argument, we noted that the amendment did not prejudice the defendant's substantial rights because the defenses available to him under the original information remained available to him under the amended information. *Id.*

Here, Jones has not suggested any defenses available to him under the original information that were foreclosed by the amendment. Certainly the defense he actually used at trial would have been equally applicable under either circumstance. At trial, only two witnesses testified, Detective Campbell and the arresting officer. Jones's defense was to highlight inconsistencies in the officers' testimony and challenge their credibility and their identification of him. This defense was no less viable after the State amended the information to delete one of the possible theories of Jones's liability.

■ Jones next maintains that the State presented insufficient evidence that he "procured" a prostitute. In reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Roop v. State,* 730

N.E.2d 1267, 1270 (Ind.2000). We will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment, we conclude that no reasonable fact finder could find the elements of the crime proven beyond a reasonable doubt. *Cade v. State,* 734 N.E.2d 575, 576 (Ind.2000).

■ Jones argues that "the evidence does not show that Jones recruited or even encouraged Fox to become a prostitute...." *Appellant's Brief* at 15. IC 35-45-4-4(2) provides that a person who knowingly or intentionally procures, or offers or agrees to procure, a person for another person for the purpose of prostitution commits promoting prostitution. To support a conviction under this section, the State need only show that the defendant was aware that there was a high probability that he was procuring a prostitute for another person and that he was doing so for the purpose of prostitution. *Luginbuhl v. State,* 507 N.E.2d 620, 622 (Ind.Ct. App.1987), *trans. denied.*

In *Luginbuhl,* 507 N.E.2d at 622–23, the defendant was giving a massage to an undercover police officer. The police officer asked the defendant if she would perform a sex act for money. The defendant told the officer that she would be able to get him oral sex for sixty-five dollars, then left the room and returned with another woman, who began engaging in an act of prostitution immediately upon entering the room.

The defendant argued that she had not "procured" a prostitute for the undercover police officer. She contended that the evidence failed to show she did anything to "bring about," "effect," or "cause" the act of prostitution. We rejected the defendant's argument, explaining that her definition of the word "procure" was too narrow, that the statutory intent was not to

require a showing of conduct designed to effectuate the act of prostitution to prove a defendant's guilt. *Id.* Rather, we held that procurement includes a broad range of prohibited behaviors that involve initiating, continuing, bringing about, effecting, or causing. *Id.*

We focused on evidence that the defendant actively furthered the act of prostitution that occurred and that she knowingly solicited the prostitute for the undercover police officer and actually brought about or effected the criminal offense. We determined that the defendant did more than permit the criminal activity. Rather, she facilitated the act by screening the patron, soliciting the payment, and arranging for the prostitute to meet with the patron. The evidence that defendant told the officer that she would be able to get him oral sex for sixty-five dollars, and that the prostitute immediately began performing an act of prostitution upon entering the room provided the basis for a reasonable inference that the defendant knew the prostitute would commit the act and prevailed upon her to engage in the prohibited conduct. *Id.* at 622–23.

Similarly, here, Jones, when told of Campbell's interest in finding a prostitute, conducted the men into his apartment, where Fox sat at a table. He commented that Fox was "real expensive" and directed her to lift her shirt so that Campbell could examine her. *Transcript* at 27. He then explained that Campbell could use his room for the night if he were paid "off the top." *Id.* After receiving twenty dollars, Jones commented that Campbell could use his room all night. When Fox and Campbell began discussing condoms, Jones responded that he sold condoms. This was sufficient evidence from which a trier of fact could reasonably infer that Jones did more than passively possess a permissive disposition toward prostitution. Rather,

he screened the patron, arranged the meeting, allowed Campbell to inspect Fox prior to striking a deal, accepted part of the money himself, and encouraged a sexual encounter by offering to sell Campbell condoms when Campbell suggested that he needed them. There was sufficient evidence of probative value to support Jones's conviction. *See also Kleinrichert v. State,* 260 Ind. 537, 541–42, 297 N.E.2d 822, 825 (1973) (finding sufficient evidence on procuring conviction where the prostitute testified that she gave the defendant $125 obtained by her from prostitution).

Finally, Jones asserts that his sentence of five years' imprisonment for promoting prostitution violates the Proportionality Clause of the Indiana constitution, which provides: "All penalties shall be proportioned to the nature of the offense." IND. CONST., Art. I, § 16. In so arguing, he notes that IC 35–45–4–4 classifies promoting prostitution as a Class C felony unless the prostitute is under eighteen years of age. The range of sentences for conviction of a Class C felony is two to eight years. IC 35–50–2–6. By comparison, a first offense of prostitution is a Class A misdemeanor, punishable by a sentence of up to one year. IC 35–45–4–2; IC 35–50–3–2. Thus, the promoter of prostitution can be punished by a sentence up to eight times longer than a person convicted of a first offense of prostitution. Jones argues that it is constitutionally impermissible to punish the promoter of prostitution many times more severely than the prostitute herself.

Determining the appropriate sentence for a crime is a function properly exercised by the legislature. *State v. Moss–Dwyer,* 686 N.E.2d 109, 111 (Ind. 1997); *Teer v. State,* 738 N.E.2d 283, 290 (Ind.Ct.App.2000), *trans. denied* (2001); *Balls v. State,* 725 N.E.2d 450, 453 (Ind.Ct. App.2000), *trans. denied.* Our separation

of powers doctrine requires we take a highly restrained approach when reviewing legislative prescriptions of punishments. *Moss–Dwyer*, 686 N.E.2d at 111. A reviewing court will not disturb the legislature's determination unless there is a showing of clear constitutional infirmity. *Id.; Teer*, 738 N.E.2d at 290; *Balls*, 725 N.E.2d at 453. Courts are not free to set aside legislatively sanctioned penalties because they seem too severe to the reviewing court. *Conner v. State*, 626 N.E.2d 803, 806 (Ind.1993); *Teer*, 738 N.E.2d at 290. A prison sentence, however, may be so disproportionate as to be unconstitutional because of its length, if it is so severe and entirely out of proportion to the gravity of offense committed as to shock public sentiment and violate the judgment of reasonable people. *Teer*, 738 N.E.2d at 290.

▮ Our supreme court has explained that the analysis is "straightforward" where the statutory punishment of a single crime is alleged to be constitutionally disproportionate. *Moss–Dwyer*, 686 N.E.2d at 111. We will find a sentence not proportional when a criminal penalty is not graduated and proportioned to the nature of an offense. *Dunlop v. State*, 724 N.E.2d 592, 597 (Ind.2000). We begin with the presumption of constitutional validity, and therefore the party challenging the statute labors under a heavy burden to show that the statute is unconstitutional. *Moss–Dwyer*, 686 N.E.2d at 112.

In support of his argument, Jones cites *Conner*, 626 N.E.2d at 806, where our supreme court analyzed a claim that the punishment for selling fake marijuana was disproportionate because it was many times greater than the punishment for selling real marijuana. Because the six year prison term the defendant received was twice the maximum penalty available had he actually sold marijuana to the police

informant, the court held that a doubling of the penalty is out of proportion to the nature of his offense. *Id.*

We find *Conner* inapposite here. In *Moss–Dwyer*, 686 N.E.2d at 112, our supreme court explained that its decision in *Conner* relied on the legislative pattern of treating marijuana offenses more leniently than the same offenses relating to other controlled substances. It stated that the *Conner* decision was not based solely on apparent inconsistencies in the legislative scheme relating to drug enforcement, but an examination of the entire legislative scheme punishing drug offenses. In conducting such a review, the court found that dealing fake marijuana was punished more harshly than real marijuana, while real marijuana offenses were generally punished more leniently than other real drug offenses and real drug dealing was punished more harshly than fake drug dealing. It was this discrepancy which led to the *Conner* court's ultimate decision that the penalty in that case was disproportionate. *Id.*

▮ By contrast, here a single legislative scheme evidencing a consistent pattern is at issue. While both the promoter of prostitution and the prostitute are certainly involved in the same criminal enterprise, we see nothing incongruous or unfair about the legislature's decision to punish the two crimes differently. As our supreme court explained: "[I]t seems that the legislature has rationally concluded that the business manager of a prostitution enterprise typically imposes a greater harm on society than the sole practitioner." *State v. Hartman*, 602 N.E.2d 1011, 1013 (Ind.1992). Because of this greater harm, the legislature chose to punish the manager of such enterprises more severely than the individual prostitutes. In light of the presumption of constitutionality of statutes, and the heavy burden on the

party asserting unconstitutionality, we are not convinced that the promoting prostitution penalty scheme violates the proportionality requirement of the Indiana Constitution.

Affirmed.

MATHIAS and BARNES, JJ., concur.