

FILED

Feb 28 2018, 7:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jonathan A. Leachman
Fifer Law Office
New Albany, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eric P. Wheeler,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 28, 2018<br><br>Court of Appeals Case No.<br>88A05-1703-CR-541<br><br>Appeal from the Washington<br>Circuit Court<br><br>The Honorable Larry W. Medlock,<br>Judge<br><br>Trial Court Cause No.<br>88C01-1510-F5-596 |

**Mathias, Judge.**

[1] Following a jury trial in Washington Circuit Court, Eric P. Wheeler ("Wheeler") was convicted of Class A misdemeanor operating a motor vehicle with an alcohol concentration equivalent of 0.15 and determined to be an habitual vehicular substance offender. The trial court sentenced Wheeler to one year suspended to probation on the Class A misdemeanor conviction and five

and one-half years executed for being an habitual vehicular substance offender. Wheeler appeals and presents five issues, which we consolidate, reorder, and restate as the following three:

I. Whether the trial court erred by permitting the State to amend the charging information to eliminate one of the alleged predicate offenses;

II. Whether the trial court abused its discretion in the admission of toxicology evidence of Wheeler's blood sample; and

III. Whether Wheeler's sentence is inappropriate.

We affirm.

## Facts and Procedural History

On the night of October 23, 2015, Washington County Sheriff's Deputies Brad Naugle ("Deputy Naugle") and Joe Keltner ("Deputy Keltner") were dispatched to the scene of a single-vehicle roll-over accident on State Road 60 in Washington County. There were no injuries in the single-vehicle accident, and a wrecker tow truck was on scene to remove the damaged car. As the tow-truck operator, Steve Borden ("Borden"), attempted to load the wrecked car onto the tow truck, Deputy Naugle got in his patrol car to complete an incident report. A local teenager, Dillon Moore ("Moore"), who had been riding along with Deputy Naugle that night, was standing behind Deputy Naugle's patrol car. Deputy Keltner was in the road waving a blue and red wand to warn oncoming traffic to stop. This warning was in addition to the flashing emergency lights on the patrol cars and the wrecker truck. As Deputy Keltner directed traffic, he

observed a Toyota pickup truck approaching the scene of the accident without slowing down. When he realized the truck was not going to stop, Deputy Keltner yelled out a warning to the others.

[4]     Deputy Keltner attempted to jump out of the way of the fast-approaching pickup truck but was only partially successful; the truck struck his legs as he was in mid-air, causing him to be thrown into a ditch. The pickup truck then struck the driver's side door of Deputy Naugle's car, knocking the door off. Deputy Naugle had been sitting with one leg outside the vehicle with his door open and was barely able to get himself fully inside the vehicle before it was struck. The pickup truck also hit the tow truck, which knocked Borden underneath the vehicle he was attaching to the tow truck. Moore was hit by flying debris and knocked down.

[5]     Immediately after the impact, Deputy Naugle checked himself for injuries and noted that he had pain in his head, neck, upper leg, and abdomen. He then got out of his car to check on the others. He saw Deputy Keltner get up off the ground and heard him report that he had been struck in the legs. He then went behind his car to check on Moore, who collapsed in front of him. Borden also got up off the ground after the accident, relatively unscathed. Deputy Naugle called for an ambulance and went to check on the driver of the pickup truck, later identified as Wheeler.

[6]     When Deputy Naugle got to the pickup truck, Wheeler reached toward the passenger's side of his truck. Deputy Naugle told Wheeler to keep his hands on

the steering wheel where he could see them, but Wheeler still tried to reach toward the other side of the truck and told Deputy Naugle, "F**k you." Tr. Vol. 2, p. 221. Deputy Naugle repeated his warning, but Wheeler still ignored him and repeated his vulgar comment. Wheeler then got out of his vehicle and approached the deputy in an aggressive manner. This caused Deputy Naugle to pull out his taser and order Wheeler to put his hands on his vehicle. Still, Wheeler did not comply but instead threatened to sue Deputy Naugle and got back into his truck. Deputy Keltner came over to help, and the two of them removed Wheeler from the vehicle and placed him in handcuffs.

[7] Deputy Naugle detected the odor of alcohol on Wheeler. But due to the injuries to him and Deputy Keltner, he decided to radio for assistance so other officers could investigate Wheeler. Salem Police Department Officer Chris Cauble ("Officer Cauble") arrived on the scene. Officer Cauble too noticed the smell of alcohol on Wheeler. He also observed that Wheeler's eyes were red and that his speech was slurred. Because of the recent accident, Officer Cauble did not conduct any field sobriety tests. Instead, he read Wheeler the Indiana implied consent law, and Wheeler agreed to submit to a blood draw. Officer Cauble then took Wheeler to the hospital for a blood draw.

[8] At the hospital, Wheeler's blood was drawn by medical technologist Lynn Mach ("Mach"). Serum testing at the hospital indicated that Wheeler had a blood alcohol concentration of 0.215. Tr. Vol. 2, pp. 29–30. Mach also drew two vials of Wheeler's blood for further testing. Mach mislabeled the first vial as coming from "Chris Wheeler," but properly labelled the second as coming

from "Eric Wheeler." *Id.* at 62–63. Mach later suspected that she mislabeled the one vial because she was speaking with Officer Chris Cauble at the time and used his first name instead of Wheeler's first name.

[9]     As a result of this incident, the State charged Wheeler on October 26, 2015 as follows:

- Count 1: Level 6 felony operating a vehicle while intoxicated with a prior conviction for operating while intoxicated within the past five years;
- Count 2: Level 5 felony operating a vehicle while intoxicated causing serious bodily injury to Moore;
- Count 3: Level 5 felony operating a vehicle while intoxicated causing serious bodily injury to Deputy Keltner;
- Count 4: Level 5 felony operating a vehicle while intoxicated causing serious bodily injury to Deputy Naugle;
- Count 5: Class A misdemeanor resisting law enforcement;
- Count 6: Class A misdemeanor operating a vehicle while intoxicated with an alcohol concentration equivalent of at least 0.15; and
- Count 7: Class A misdemeanor operating a vehicle while intoxicated in a manner that endangered a person.

[10]     On December 22, 2015, the State filed an additional information alleging that Wheeler was an habitual vehicular substance offender, listing three prior offenses. On December 28, 2015, the State filed a motion to add Count 8, another charge of Class A misdemeanor resisting law enforcement. The trial court granted this motion that same day. Almost one year later, on December 22, 2016, the State moved to dismiss Counts 2, 3, 4, and 8, which the trial court granted. This left the following renumbered counts:

- Count 1: Level 6 felony operating a vehicle while intoxicated with a prior conviction for operating while intoxicated within the past five years;
- Count 2: Class A misdemeanor resisting law enforcement; and
- Count 3: Class A misdemeanor operating a vehicle while intoxicated with an alcohol concentration equivalent of at least 0.15;
- Count 4: Class A misdemeanor operating a vehicle while intoxicated in a manner that endangered a person

[11]  Forensic scientist Cheryl Anderson ("Anderson") of the Indiana State Department of Toxicology tested the mislabeled vial of Wheeler's blood on March 15 and 16, 2016. The tests of this vial indicated that Wheeler's blood alcohol concentration was 0.184. The second vial, which was properly labeled, was not tested until January 30, 2017, two days before Wheeler's trial, and indicated that Wheeler's blood alcohol concentration was 0.179.

[12]  Immediately prior to trial, Wheeler moved to suppress the results of the tests of the second vial of blood because it was not disclosed to him until shortly before trial.[1] Wheeler argued that the late disclosure of this blood test by the State should be sanctioned by exclusion of the test results of that vial. The trial court denied the motion to suppress. When the trial court made its ruling, Wheeler moved for a continuance to allow preparation to address this evidence. The State did not oppose the motion, but the trial court nevertheless denied the motion. The court did, however, recess until the following day, to allow

---

[1] Wheeler filed his motion on January 30, 2017, the same day that the State disclosed to him the results of the second vial.

Wheeler's counsel the opportunity to depose the State's witness sponsoring the blood evidence.

[13] A jury trial took place on February 1–3, 2017. On the last day of trial, the State moved to amend the information alleging Wheeler to be an habitual vehicular substance offender by removing the reference to the second of the three listed prior convictions. The trial court granted the State's motion over Wheeler's objection. The jury ultimately found Wheeler guilty of the first three of the remaining and renumbered counts: Counts 1, 2, and 3, but acquitted him on Count 4. The jury then found that Wheeler was an habitual vehicular substance offender.

[14] The trial court held a sentencing hearing on February 13, 2017. Due to concerns about double jeopardy, the court entered judgment of conviction on renumbered Count 3 only for Class A misdemeanor operating a vehicle while intoxicated with an alcohol concentration equivalent of at least 0.15. The court imposed a sentence of one year, suspended to probation, and attached to this an habitual vehicular substance offender enhancement of five and one-half years executed. Wheeler now appeals.

## I. Amendment of Charging Information

[15] Wheeler first argues that the trial court erred by permitting the State to amend the charging information which alleged that he was an habitual vehicular substance offender. The statute governing the amendment of charging instruments provides:

(a) An indictment or information which charges the commission of an offense may not be dismissed but may be amended on motion by the prosecuting attorney *at any time* because of any immaterial defect, including:

    (1) any miswriting, misspelling, or grammatical error;

    (2) any misjoinder of parties[,] defendant or offenses charged;

    (3) the presence of any unnecessary repugnant allegation;

    (4) the failure to negate any exception, excuse, or provision contained in the statute defining the offense;

    (5) *the use of alternative or disjunctive allegations as to the acts, means, intents, or results charged;*

    (6) any mistake in the name of the court or county in the title of the action, or the statutory provision alleged to have been violated;

    (7) the failure to state the time or place at which the offense was committed where the time or place is not of the essence of the offense;

    (8) the failure to state an amount of value or price of any matter where that value or price is not of the essence of the offense; or

    (9) *any other defect which does not prejudice the substantial rights of the defendant.*

(b) *The indictment or information may be amended in matters of substance* and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant at any time:

    (1) up to:

        (A) thirty (30) days if the defendant is charged with a felony; or

        (B) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;

before the omnibus date; or

(2) before the commencement of trial;

*if the amendment does not prejudice the substantial rights of the defendant.* When the information or indictment is amended, it shall be signed by the prosecuting attorney or a deputy prosecuting attorney.

(c) *Upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant.*

(d) Before amendment of any indictment or information other than amendment as provided in subsection (b), the court shall give all parties adequate notice of the intended amendment and an opportunity to be heard. Upon permitting such amendment, the court shall, upon motion by the defendant, order any continuance of the proceedings which may be necessary to accord the defendant adequate opportunity to prepare the defendant's defense.

(e) *An amendment of an indictment or information to include a habitual offender charge under IC 35-50-2-8 must be made at least thirty (30) days before the commencement of trial. However, upon a showing of good cause, the court may permit the filing of a habitual offender charge at any time before the commencement of the trial if the amendment does not prejudice the substantial rights of the defendant.* If the court permits the filing of a habitual offender charge less than thirty (30) days before the commencement of trial, the court shall grant a continuance at the request of the:

(1) state, for good cause shown; or
(2) defendant, for any reason.

Ind. Code § 35-34-1-5 ("Section 5") (emphases added). Wheeler argues that the State's amendment of the habitual vehicular substance offender information was not permitted under any of the provisions of Section 5.

[16] Wheeler claims that the State was prohibited from amending the habitual offender information under Subsection 5(e) because the State did not move to amend the information until well after thirty days before trial. But Subsection 5(e) governs amendments to *include* an habitual offender allegation. Here, the State did not move to amend the information to include an habitual offender allegation. It moved to amend the information to remove an allegation of a predicate offense for an habitual offender allegation that had already been timely filed.[2] Subsection 5(e) is therefore inapplicable.

[17] Wheeler also claims that the amendment to the habitual offender information was impermissible under Subsections 5(b) and (c) because, he argues, the amendment to the charging information did "prejudice the substantial rights of the defendant." Both of these subsections preclude amendments which are so significant that they prejudice a defendant's substantial rights. Similarly, Subsection 5(a)(9) permits amendments to correct "any other defect which does not prejudice the substantial rights of the defendant." Thus, the question before us is whether the amendment of the habitual offender information prejudiced Wheeler's substantial rights. This requires us to consider the habitual vehicular

---

[2] The habitual offender allegation was filed on December 22, 2015, and the jury trial took place on February 3, 2017, over one year later.

substance offender statute and the information alleging that Wheeler was an habitual vehicular substance offender under this statute.

[18]     The habitual vehicular substance offender statute provides:

> (a)  The state may seek to have a person sentenced as a habitual vehicular substance offender for any vehicular substance offense by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated *two (2) or three (3) prior unrelated vehicular substance offense convictions. If the state alleges only two (2) prior unrelated vehicular substance offense convictions, the allegation must include that at least one (1) of the prior unrelated vehicular substance offense convictions occurred within the ten (10) years before the date of the current offense.*
>
> (b)  For purposes of subsection (a), a person has accumulated two (2) or three (3) prior unrelated vehicular substance offense convictions only if:
>
>> (1)  the second prior unrelated vehicular substance offense conviction was committed after commission of and sentencing for the first prior unrelated vehicular substance offense conviction;
>>
>> (2)  the offense for which the state seeks to have the person sentenced as a habitual vehicular substance offender was committed after commission of and sentencing for the second prior unrelated vehicular substance offense conviction; and
>>
>> (3)  for a conviction requiring proof of three (3) prior unrelated vehicular substance offense felonies, the third prior unrelated vehicular substance offense conviction was committed after commission of and sentencing for the second prior unrelated vehicular substance offense conviction.
>
> However, a conviction does not count for purposes of subsection (a) if it has been set aside or it is a conviction for which the person has been pardoned.

(c)  A person is a habitual vehicular substance offender if the jury (if the hearing is by jury) or the court (if the hearing is to the court alone) finds that the state has proved beyond a reasonable doubt that the person has accumulated three (3) or more prior unrelated vehicular substance offense convictions at any time, *or two (2) prior unrelated vehicular substance offense convictions, with at least one (1) of the prior unrelated vehicular substance offense convictions occurring within ten (10) years of the date of the occurrence of the current offense.*

(d)  The court shall sentence a person found to be a habitual vehicular substance offender to an additional fixed term of at least one (1) year but not more than eight (8) years of imprisonment, to be added to the term of imprisonment imposed under IC 35-50-2 or IC 35-50-3.

(e)  Charges filed under this section must be filed in a circuit court or superior court.

Ind. Code § 9-30-15.5-2 (emphases added).

[19]  Pursuant to this statute, the State has an option of alleging that a defendant has been convicted of two or three prior unrelated vehicular substance offenses. If the State alleges that the defendant has been convicted of three prior unrelated vehicular substance offenses, then there is no time limit on the age of the prior convictions. If, however, the State alleges that the defendant has only two prior unrelated vehicular substance offense convictions, then the State must also prove that at least one of the prior unrelated vehicular substance offense convictions occurred within ten years of the date of the instant offense.

[20]  In the present case, the State initially alleged that Wheeler was an habitual vehicular substance offender as follows:

1. On September 25, 2010, Eric P. Wheeler committed the offense of Operating While Intoxicated with a Prior Conviction, Class D felony, and was convicted of Operating While Intoxicated With a Prior Conviction, Class D felony, on August 28, 2013, in the Washington County Superior Court, Indiana, Cause No. 88D01-1009-FD-561;

2. On January 7, 2006, Eric P. Wheeler committed the offense of Operating While Intoxicated, Class A misdemeanor, and was convicted of Operating While Intoxicated, Class A misdemeanor, on July 11, 2006, in the Floyd County Court, Indiana, Cause No. 22E0601-CM-43 [sic];

3. On February 17, 2006, Eric P. Wheeler committed the offense of Operating While Intoxicated, Class A misdemeanor, and was convicted of Operating While Intoxicated, Class A misdemeanor, on June 26, 2006, in the Washington County Superior Court, Indiana, Cause No. 88D01-0602-CM-40;

4. Pursuant to I.C. 9-30-15.5-2, Eric P. Wheeler has accumulated the requisite prior, unrelated vehicular substance convictions, and is therefore a Habitual Vehicular Substance Offender.

Appellant's App. Vol. II, p. 64. The trial court permitted the State to amend the information by eliminating the second paragraph.

Wheeler argues that this amendment to the habitual offender information prejudiced his substantial rights. "A defendant's substantial rights 'include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights.'" *Erkins v. State*,

13 N.E.3d 400, 405 (Ind. 2014) (quoting *Gomez v. State*, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009)).

[22] Wheeler contends that the allowed amendment "eviscerated" his planned defense to the original information. Appellant's Br. at 17. That is, he intended to argue that his conviction in the second-alleged predicate offense had been modified such that it no longer qualified as a prior unrelated vehicular substance offense. Wheeler's entire argument on this issue is predicated upon his belief that, under the original habitual offender information, the State was required to prove all three of alleged the prior unrelated offenses. This belief is incorrect.

[23] The habitual vehicular substance offender statute provides for two alternative methods of establishing that a defendant is an habitual vehicular substance offender, i.e., by proving either that the defendant has three or more prior unrelated convictions for vehicular substance offenses, *or* that the defendant has two prior unrelated vehicular substance offense convictions and that one of these prior convictions occurred within ten years of the instant offense. The original habitual offender information alleged three prior unrelated habitual vehicular substance offense convictions, but this did not require the State to prove all three convictions.

[24] Even under the original information, the State could have established that Wheeler was an habitual vehicular substance offender by proving any two of the three alleged convictions, plus showing that one of these two convictions

occurred within ten years before the date of the instant offense. Accordingly, by permitting the State to eliminate one of the three alleged prior unrelated offenses, the trial court did not deprive Wheeler of a defense, as his claimed defense would have been futile even under the original habitual offender information.

[25] We therefore find Wheeler's citation to *Nunley v. State*, 995 N.E.2d 718 (Ind. Ct. App. 2013), *clarified on reh'g*, 4 N.E.3d 669, to be unavailing. In that case, the State alleged that the defendant was an habitual offender, and the original habitual offender information listed two prior unrelated convictions to support the habitual offender count: a conviction for theft and a conviction for possession of cocaine. *Id*. at 722. After the trial had started, the State requested leave to amend the habitual offender charge in order to remove the allegation that Nunley had a prior unrelated conviction for possession of cocaine and substitute an allegation that he had additional prior convictions for theft. The trial court permitted the amendment, and Nunley appealed. On appeal, we held that the trial court erred in allowing the amendment because it "drastically changed" the defendant's available defenses in that, under the original information, the charged offenses would not have supported an habitual offender finding. *Id*. at 723. In contrast, in the present case, even under the original habitual offender information, the alleged prior convictions would have sufficed to support an habitual vehicular substance offender finding. Removing the second alleged conviction did not alter this fact.

[26]     The same is true for Wheeler's citation to *Gibbs v. State*, 952 N.E.2d 214 (Ind. Ct. App. 2011), *trans. denied*. In that case, the original information charged Gibbs with an arson that damaged the apartments of his neighbors. The fire, however, actually only damaged Gibbs's own apartment. The trial court then permitted the State to amend the information, after the jury had been empaneled, to eliminate the reference to the neighbors' property. On appeal, we held that this amendment was one of substance because it deprived Gibbs of a defense. *Id.* at 221. Here, however, Wheeler's claimed defense was equally unviable under the original information as it was under the amended information.

[27]     We therefore conclude that the amendment to the habitual vehicular substance offender information was for an "immaterial defect," which includes "the use of alternative or disjunctive allegations as to the acts, means, intents, or results charged." I.C. § 35-34-1-5(a)(5). Because Wheeler has not shown that the amendment prejudiced his substantial rights, the trial court did not err in permitting the amendment to the information alleging that Wheeler was an habitual vehicular substance offender. *See Jones v. State*, 766 N.E.2d 1258, 1262–63 (Ind. Ct. App. 2002) (holding that defendant's substantive rights were not prejudiced by amendment to charging information that deleted one of two

alternate bases for the defendant's criminal liability), *abrogated in part by Fajardo v. State*, 859 N.E.2d 1201 (Ind. 2007).[3]

## II. Admission of Blood Test Evidence

[28] Wheeler also argues that the trial court abused its discretion when it admitted into evidence the test results which were performed only shortly before trial. In reviewing this claim, we first note that questions regarding the admission of evidence are entrusted to the sound discretion of the trial court, and we review such issues only for an abuse of that discretion. *Bradley v. State*, 770 N.E.2d 382, 385 (Ind. Ct. App. 2002), *trans. denied*. With regard to the exclusion of evidence as a sanction for discovery violations, we have noted before:

> Trial courts[] are given wide discretionary latitude in discovery matters and their rulings will be given deference on appeal. The trial court's determination of violations and sanctions will be affirmed absent clear error and resulting prejudice. The most extreme sanction of [evidence] exclusion should not be employed unless the . . . breach has been purposeful or intentional or unless substantial and irreparable prejudice would result[.]

---

[3] *Jones* was one of several cases that held that the issue of the propriety of a belated amendment to a charging instrument should focus on whether the defendant's substantial rights were prejudiced, and not whether the challenged amendment was one of form or substance. *See Fajardo v. State*, 859 N.E.2d 1201, 1206 n.10 (Ind. 2007). *Fajardo* abrogated this rule and held that the key determination in late amendments to charging instruments was whether the amendment was one of form (which was permissible) or substance (which was not). *See id*. at 1206–07. Our General Assembly quickly responded to *Fajardo* by amending Section 5, effective May 8, 2007, to reflect the pre-*Fajardo* law, *i.e.*, amendments of substance are permitted any time before trial so long as the defendant's rights are not prejudiced. *Shaw v. State*, 82 N.E.3d 886, 891 (Ind. Ct. App. 2017) (citing *Hurst v. State*, 890 N.E.2d 88, 95 (Ind. Ct. App. 2008)), *reh'g denied*. Thus, although *Fajardo* abrogated *Jones*, *Fajardo* itself was later abrogated, returning the law to its pre-*Fajardo* state, and we perceive no impediment to citing *Jones*.

*Id*. at 386–87 (citations and internal quotations omitted).

[29]     Wheeler claims that the trial court committed reversible error by admitting the test results of the vial of blood that was tested only two days before the start of the trial. We are unable to agree.

[30]     First, there is no indication that the delay in testing the second vial was in any way deliberate. The Friday before Wheeler's trial, the Indiana State Department of Toxicology called the prosecuting attorney to alert her about the labeling mistake. The overlooked vial was tested the following Monday, and the results were almost immediately disclosed to the defense. Although Wheeler takes the trial court to task for denying his unopposed request for a continuance, we note that the trial judge recessed the trial for the remainder of the day and permitted Wheeler's counsel to depose the State's witnesses regarding the belatedly disclosed evidence.[4] Thus, the trial court effectively granted a brief continuance. Wheeler does not explain how this short recess or continuance was inadequate or how a longer continuance would have assisted his defense.

[31]     Moreover, even if we assume that the trial court abused its discretion in the admission of this belatedly disclosed evidence, Wheeler would not prevail. It is well established that we will not reverse a conviction due to evidentiary error unless this error affects the substantial rights of the defendant. *Teague v. State*,

---

[4] The trial court also ordered the State to pay the costs of the depositions.

978 N.E.2d 1183, 1188 (Ind. Ct. App. 2012). An error is harmless if there is substantial independent evidence of guilt and we are satisfied that there is no substantial likelihood the challenged evidence contributed to the conviction. *Id.* at 1189. If the erroneously admitted evidence was merely cumulative, its admission is harmless error. *Id.*

[32] Here, the admission of the test results of the belatedly tested vial was merely cumulative of other evidence to which Wheeler made no objection. Indeed, Mach testified that the test of Wheeler's blood serum performed at the hospital on the night of the accident indicated that Wheeler had a blood alcohol concentration of 0.215. And Anderson testified that her testing of the timely tested vial of blood indicated a blood alcohol concentration of 0.184.[5] *See* Tr. p. 155. The evidence regarding the belatedly tested vial of blood was therefore merely cumulative of the other blood tests. Because it was cumulative, we are satisfied that there was no substantial likelihood the belatedly tested vial contributed to the conviction. Accordingly, the admission of these results was at most harmless error. *See Teague,* 978 N.E.2d at 1188.

### III. Appropriateness of Wheeler's Sentence

[33] Wheeler also argues that the sentence imposed by the trial court, an aggregate sentence of five and one-half years executed and one year suspended to

---

[5] Anderson also testified, without apparent objection, that her testing of the belatedly tested vial indicated a blood alcohol concentration of 0.179. When Anderson's toxicology report was admitted into evidence, Wheeler's counsel made no contemporaneous objection, but the trial court indicated that the report was admitted "over counsel's objection." Tr. p. 156. The State, however, does not argue that Wheeler waived his claim of evidentiary error by failing to object. So we address Wheeler's claim on its merits.

probation, is inappropriate in light of the nature of Wheeler's offense and Wheeler's character.

[34] Indiana Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Still, we must exercise deference to a trial court's sentencing decision, because Rule 7(B) requires us to give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id*. Thus, although we have the power to review and revise sentences, the principal role of appellate review should be to attempt to "leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

[35] Our review under Rule 7(B) should focus on "the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id*. The appropriate question is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate. *Rose v. State*, 36 N.E.3d 1055, 1063 (Ind. Ct. App. 2015). It is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

[36] Here, Wheeler was convicted of a Class A misdemeanor and determined to be an habitual vehicular substance offender. If a person is convicted of a Class A misdemeanor, the trial court may sentence him to up to one year in prison. Ind. Code § 35-50-3-2. If a person is determined to be an habitual vehicular substance offender, the trial court may add an additional sentence of one to eight years. I.C. § 9-30-15.5-2(d). Thus, Wheeler was facing a sentence of two to nine years of incarceration, and the trial court sentenced him to an executed term of five and one-half years and one year suspended to probation.

[37] The nature of Wheeler's offense does little to convince us that this sentence is inappropriate. He drove his vehicle while intoxicated and ran into a well-marked accident scene, hitting a police officer and two vehicles. If not for the quick response of Deputy Keltner and Deputy Naugle, their injuries could have been more severe. Indeed, Wheeler is extremely fortunate that no one was killed. Wheeler's behavior immediately after the accident was belligerent and disrespectful. Instead of checking to see if anyone was injured, he cursed at the deputy and threatened to sue him.

[38] The trial court's sentence is also supported by Wheeler's character, as revealed by his criminal history. In 2004, Wheeler was convicted of an unknown Class C misdemeanor and sentenced to probation which included alcohol and drug treatment. In 2006, he was convicted of Class D felony possession of marijuana, Class C misdemeanor operating a vehicle while intoxicated with a blood alcohol concentration of 0.08, and Class A misdemeanor operating a vehicle with an alcohol concentration equivalent of 0.15. And again in 2010, Wheeler

was convicted of Class D felony operating a vehicle while intoxicated with a prior conviction and Class A misdemeanor intimidation. The incident that led to the 2010 conviction bore a similarity to the instant offense in that Wheeler threatened to "beat up" the arresting officer and make him lose his job. *See* Appellant's App. Vol. 3, p. 120. Wheeler was also arrested in 2011 for operating a vehicle while intoxicated, but this charge was dismissed as part of a plea agreement in another case. Additionally, at the time of sentencing, Wheeler had a pending charge of Class B misdemeanor leaving the scene of an accident.

[39] Nothing about Wheeler's character persuades us that his sentence is inappropriate. Indeed, it is apparent that prior attempts at leniency have failed to dissuade Wheeler from driving while intoxicated. Simply put, Wheeler is a recidivist drunk driver whose behavior has been undeterred by his prior contacts with the criminal justice system, and his prior convictions, as they relate to the current offense, reflect very poorly on his character. *See Wooley v. State*, 716 N.E.2d 919, 929 n.4 (Ind. 1999) (noting that a prior conviction for operating while intoxicated would be a significant aggravator in a subsequent alcohol-related offense). In short, Wheeler's sentence is not inappropriate.

# Conclusion

[40] The trial court did not err in permitting the State to amend the information alleging that Wheeler was an habitual vehicular substance offender, nor did the trial court err in admitting into evidence the results of the tests on the belatedly tested vial of Wheeler's blood. Lastly, Wheeler's sentence is not inappropriate.

[41]    Affirmed.

Najam, J., and Barnes, J., concur.