# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 14 2019, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rodney T. Sarkovics
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony Steven Williams, Jr., *Appellant-Defendant,* | June 14, 2019 |
| v. | Court of Appeals Case No. 18A-CR-1808 |
| | Appeal from the Hamilton Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Paul A. Felix, Judge |
| | Trial Court Cause No. 29C01-1802-F3-768 |

**Tavitas, Judge.**

# Case Summary

Anthony Steven Williams, Jr., appeals from his convictions and sentences for criminal confinement, a Level 3 felony; battery causing moderate bodily injury and pointing a firearm, Level 6 felonies; battery with a deadly weapon, a Level 5 felony; and dealing in marijuana and possession of a controlled substance, Class A misdemeanors. We affirm in part, reverse in part, and remand for entry of a revised sentencing order.

# Issues

Williams raises six issues on appeal, which we restate as follows:

> I. Whether sufficient evidence exists to support Williams' conviction for criminal confinement.
>
> II. Whether Williams' convictions run afoul of double jeopardy principles.
>
> III. Whether the trial court erred in permitting the State to amend the habitual offender information after the commencement of trial.
>
> IV. Whether the trial court improperly instructed jurors regarding the habitual offender enhancement.
>
> V. Whether the trial court's treatment of Williams' habitual offender adjudication improperly resulted in a consecutive sentence.

# Facts

[3] The facts most favorable to the judgment are as follows: From January 28 to 30, 2018, Eric Johnson stayed at the Fishers, Indiana, home of his long-time friend, Ashley Jensen ("Ashley"). Williams was Ashley's live-in boyfriend. On January 29, Ashley and Johnson "got into a verbal altercation" during which Johnson called Ashley "[a] wh*** and a c***." Tr. Vol. II pp. 140, 144.

[4] On the evening of January 30, which was to be Johnson's last night in town, Johnson and Ashley planned to go out for drinks and to play pool with Ashley's friend, Kristen. Johnson was scheduled to fly home to Florida the following morning. Around midnight, as Ashley, Kristen, and Johnson were "literally getting ready to walk out the door," Williams came home, accompanied by Jeff Davis. *Id*. at 144. Johnson observed that Williams had a gun.

[5] Williams asked Ashley for a ride for his friends. Johnson objected and told Williams that "it was unfair that [Williams] wanted to come in at midnight and just expect [Ashley] to drop what she was doing to cater to [Williams] when [Johnson] was leaving the next morning[.]" *Id*. Williams mentioned Johnson's "verbal altercation" with Ashley the night prior and said that "he was about tired of [Johnson] being disrespectful." *Id*. The men argued, and Williams "came at [Johnson] and swung [at]" Johnson, missed, and grabbed Johnson around his torso. *Id*. at 145. Johnson dropped to the kitchen floor, and Williams "put[ ] him in a chokehold." *Id*.

Davis "put his knee on [Johnson's] chest, and Williams and Davis began kicking, "swinging [and] throwing punches" at Johnson's face and chest. *Id.* at 146. Williams hit the side of Johnson's head with a gun. *Id.* Williams and Davis ignored Johnson's pleas "to be let up and to be let go." *Id.* at 147. "[T]hree or four minutes" later, Williams pressed his gun into Johnson's back, walked Johnson to the entrance of Ashley's housing complex, and ordered Johnson "to never come back." *Id.* A bloodied Johnson flagged down a passerby who called 911.

Sergeant Joseph Wright of the Fishers Police Department responded to the dispatch and encountered Johnson "scared, disoriented, and confused"; Johnson was "bleeding severely from his face." *Id.* at 199-200. Although it was extremely cold, Johnson was not wearing a coat. Sergeant Wright called for ambulance transport, and Johnson was taken to the hospital.

Police investigators applied for a search warrant for Ashley's house, but, investigators, who went to the house, found no one at home. The investigators remained on site and waited until Williams returned to the house; he was then transported to Fishers Police headquarters, where Johnson identified Williams in a lineup.

Detective Robbie Ruble interviewed Williams and videotaped his statement. Williams claimed to have acted in self-defense after Johnson called him a "punk b****" and hit Williams in the back of his head. Tr. Vol. II p. 134. Williams told Detective Ruble that his backpack was at Ashley's house; he

admitted owning the backpack's contents. A subsequent search of Ashley's garage yielded Williams' backpack, which contained mail addressed to Williams; white, blood-spattered sneakers; a gun; a quantity of loose leaf as well as individually-bagged marijuana; and tramadol, a controlled substance.

[10] On February 2, 2018, the State charged Williams with armed robbery and criminal confinement, Level 3 felonies; battery resulting in moderate bodily injury and pointing a firearm, Level 6 felonies; battery with a deadly weapon, a Level 5 felony; and theft, dealing in marijuana, and possession of a controlled substance, Class A misdemeanors. In a separate information, the State alleged that Williams was a habitual offender.

[11] Williams was tried by a jury from April 16-18, 2018. The jury acquitted Williams on the armed robbery and theft charges and found him guilty of the remaining charges. In the habitual offender phase of the trial, the State moved—over Williams' objection—to amend the habitual offender information to reflect that Williams had two—*not three*—prior unrelated felony convictions, as the initial habitual offender information incorrectly provided.[1] In instructing the jury, the trial court neglected to advise that, according to statute, of the two prior unrelated felony convictions required for a habitual offender finding, one

---

[1] On September 18, 2008, Williams was convicted of auto theft, a Class C felony; and on November 21, 2016, Williams was convicted of fraud, a Level 6 felony.

must not be a Level 6 or Class D felony conviction. The jury subsequently found that Williams was a habitual offender.

[12] At Williams' sentencing hearing on July 5, 2018, the deputy prosecutor stated the following in his closing remarks, "I do believe some of the counts do need to be dismissed [for] double jeopardy purposes. We would ask that the Battery Resulting in Bodily Injury and the Pointing of a Firearm both be dismissed for double jeopardy purposes." Tr. Vol. III p. 198. Defense counsel objected in the following colloquy with the trial court:

> THE COURT: All right. I will turn the floor back over to you, [defense counsel], but before I do that it seems to me that the State has asked to dismiss Count 5, Pointing a Firearm, due to double jeopardy concerns, I suppose in relation to Count 2. And also asked to dismiss Count 4 due to double jeopardy concerns in regards to Count 3.
>
> [State]: Yes.
>
> THE COURT: I'm sure, [defense counsel], you don't have any objection to that?
>
> [DEFENSE COUNSEL]: Well, actually, Judge, I do have an objection. I'm not familiar under the law how the State can dismiss counts that they have obtained a conviction on. It seems to me like the horse has left the barn on that issue.
>
> THE COURT: Well, the Court of Appeals is going to suggest that I should not accept or enter a judgment against Mr. Williams for offenses that would be a double jeopardy concern for another offense for which he was convicted of.

[DEFENSE COUNSEL]: Understood.

THE COURT: But if you want me -- it seems to me based on the history of this case that the Court of Appeals will be looking at this case in some point in time, so if you want the Court of Appeals to have the full range of counts that he was convicted of, ultimately I think the Court of Appeals will sua sponte remove those counts on their own based upon double jeopardy issues.

[DEFENSE COUNSEL]: That may very well be, Your Honor, but I don't think the State has the ability to dismiss at this morning's hearing.

THE COURT: Okay, well, because of -- once again, because the State's asking for the sentences to be concurrent I don't think that's going to affect the total sentence at all but, once again, I think the Court of Appeals will get rid of those counts.

*Id*. at 198-99.

[13] The trial court then sentenced Williams as follows: for criminal confinement, fifteen years, enhanced by ten years for the habitual offender finding, for an aggregate sentence of twenty-five years, of which the court ordered that twenty years should be executed in the Department of Correction, and five years suspended to probation. As to the remaining convictions[2], the trial court sentenced Williams as follows: battery with a deadly weapon, a Level 5 felony, six years executed; battery resulting in moderate bodily injury, a Level 6 felony,

---

[2] The trial court entered judgment of conviction as to all offenses, notwithstanding double jeopardy considerations.

two and one-half years executed; pointing a firearm, a Level 6 felony, two and one-half years executed; dealing in marijuana, a Class A misdemeanor, one year executed; and possession of a controlled substance, a Class A misdemeanor, one year executed. The court ordered the latter sentences to be served concurrently with Williams' enhanced, aggregate twenty-five-year sentence for criminal confinement.

[14] Specifically, as to Williams' conviction for criminal confinement and the habitual offender finding, the trial court's sentencing order provides:

> Count 2: Criminal Confinement, a Level 3 Felony, and Habitual Offender Finding
> Total sentence: 15 years in the Indiana Department of Correction. *This sentence is further enhanced by 10 years for the Defendant being a Habitual Offender for a total of 25 years as to Count 2. . . .*

Appellant's App. Vol. II p. 57 (emphasis added). Williams now appeals.

# Analysis

## I. Sufficiency of the Evidence

[15] First, Williams argues that the evidence is not sufficient to support his conviction of criminal confinement with a deadly weapon, a Level 3 felony. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State*, 51 N.E.3d 204, 210 (Ind. 2016) (citing *Bieghler v. State*, 481 N.E.2d 78, 84 (Ind. 1985), *cert. denied*), *cert. denied*. Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'" *Id.*

(quoting *Bieghler*, 481 N.E.2d at 84). "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'" *Id*.; *see also McCallister v. State*, 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court"). Further, "[w]e will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)).

[16] Williams argues that "the jury was specifically informed that it could factually find [Williams] guilty of confinement based upon an act which constituted release." Appellant's Br. p. 19. Williams argues further that "releasing Johnson was not an act of confinement as defined by law because the act was not interfering with Johnson's liberty." *Id*.

[17] To convict Williams of criminal confinement, a Level 3 felony, the State was required to prove that Williams knowingly or intentionally confined Johnson without Johnson's consent, while Williams was armed with a deadly weapon. *See* Ind. Code § 35-42-3-3. The word "confine" is defined to mean to "substantially interfere with the liberty of a person." Ind. Code § 35-42-3-1.

[18] Here, the State presented evidence that Williams walked Johnson to the entrance of Ashley's subdivision with Williams' gun pressed into Johnson's back and ordered Johnson to leave and never come back. It was the forced

march at gunpoint that interfered with Johnson's liberty, not Williams' act of releasing Johnson. Moreover, logically, a release follows a period of confinement. That Williams ultimately released Johnson does not absolve him of the confinement. Sufficient evidence exists to support Williams' conviction for criminal confinement with a deadly weapon.

## II.    Double Jeopardy

Article 1, Section 14 of the Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense." Two or more offenses are the "same offense" in violation of the Indiana Double Jeopardy Clause if, "'with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.'" *Sistrunk v. State*, 36 N.E.3d 1051, 1053 (Ind. 2015) (quoting *Richardson* v. State, 717 N.E.2d 32, 49 (Ind. 1999)). The *Richardson* "actual evidence" test is not violated if the evidentiary facts used to establish the essential elements of one offense establish only one or even several, but not all, of the essential elements of a second offense. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).

### A. Enhancement for Use of a Deadly Weapon

First, we address Williams' argument that his use of a handgun was improperly permitted to enhance both his convictions for criminal confinement and battery with a deadly weapon, even though he "did not use the weapon repeatedly or more than once." Appellant's Br. pp. 13-14.

[21] We initially note that Williams has waived this issue by his failure to present a cogent argument. *See* Ind. Appellate R. 46(A)(8)(a); *see also Basic v. Amouri*, 58 N.E.3d 980, 983-84 (Ind. Ct. App. 2016) (internal quotations and citations omitted), *reh'g denied*. Waiver notwithstanding, we will address the merits of Williams' claim.

[22] Our Supreme Court has long adhered to the rule that precludes a "[c]onviction and punishment for an enhancement of a crime where the enhancement is imposed for the *very same behavior* or harm as another crime for which the defendant has been convicted and punished." *Sistrunk,* 36 N.E.3d at 1054 (quoting *Richardson*, 717 N.E.2d at 56). "[C]ommitting two or more separate offenses each while armed with a deadly weapon—even the same weapon—is not[,] [however] within the category of rules precluding the enhancement of each offense based on 'the very same behavior.'" *Sistrunk*, 36 N.E.3d at 1054. Stated differently, use of a single deadly weapon during the commission of separate offenses may enhance the level of each offense without running afoul of the prohibition against double jeopardy. *Id.*

[23] Here, Williams threatened Johnson with harm from the gun during his commission of the battery with a deadly weapon and criminal confinement offenses. In each instance, the threat from the gun was distinct. For the criminal confinement offense, Williams pressed the gun into Johnson's back and forced Johnson to walk at gunpoint out of Ashley's housing complex. For the battery with a deadly weapon offense, Williams struck Johnson's head with the gun during the altercation in Ashley's kitchen. *See Gates v. State*, 759 N.E.2d

631, 633 n.2 (Ind. 2001) (affirming judgment wherein defendant's convictions for rape, criminal deviate conduct, and criminal confinement were all enhanced to Class B felonies for defendant's use of the same knife); *see also Miller v. State,* 790 N.E.2d 437, 439 (Ind. 2003). We conclude that the trial court did not run afoul of double jeopardy principles by enhancing Williams' convictions for criminal confinement and battery with a deadly weapon for his use of the same deadly weapon.

## *B. Alleged Double Jeopardy Violations*

Next, Williams argues that his convictions for criminal confinement, battery by means of a deadly weapon, battery resulting in moderate bodily injury, and pointing a firearm violate the prohibition against double jeopardy. He argues that "[t]he same facts used to convict [him] of criminal confinement were also used to convict him of Battery by Means of a Deadly Weapon, Battery Resulting in Moderate Bodily Injury[,] and Pointing a Firearm." Appellant's Br. p. 10.

### *1. Battery Resulting in Moderate Bodily Injury and Pointing a Firearm*

In addition to the constitutional test prescribed by *Richardson*, Indiana courts adhere to rules of statutory construction and common law that prohibit multiple convictions, as delineated in Justice Sullivan's concurring opinion in *Richardson*. *Sistrunk*, 36 N.E.3d at 1053-54. One of those rules prohibits "[c]onviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and

punished." *Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring). An example of that rule's application is *Wethington v. State*, 560 N.E.2d 496, 508 (Ind. 1990), in which our Supreme Court vacated a confinement conviction because the confinement was coextensive with the behavior or harm necessary to establish an element of the defendant's robbery conviction. *Id.*

[26] We initially note that, at Williams' sentencing hearing, the deputy prosecutor moved to vacate Williams' convictions for pointing a firearm and battery resulting in moderate bodily injury. Defense counsel objected, and the trial court indicated that the court was agreeable to vacating the convictions on double jeopardy grounds. Ultimately, the trial court entered judgments of conviction on "the full range of counts [Williams] was convicted of," acknowledging that "the Court of Appeals will sua sponte remove those counts on [its] own based upon double jeopardy issues." Tr. Vol. III p. 199.

[27] To the extent that Williams now alleges double jeopardy violations from the trial court's entry of judgments of conviction on his convictions, we agree with the State that these claims are precluded by the invited error doctrine; however, as our Supreme Court has determined, "a double jeopardy violation, if shown, implicates fundamental rights and the invited error doctrine must 'yield to the constitution.'" *See Roach v. State*, 695 N.E.2d 934, 942 (Ind. 1998); *see Cuto v. State*, 709 N.E.2d 356, 361 (Ind. Ct. App. 1999). We must, therefore, decline the State's invitation that we should allow convictions that violate double jeopardy principles to stand. Because we find that there is a reasonable possibility that the jury used the same evidentiary facts to establish the offenses

of pointing a firearm and battery resulting in moderate bodily injury as it used to establish battery with a deadly weapon and criminal confinement, we now vacate Williams' convictions for battery resulting in moderate bodily injury and pointing a firearm on double jeopardy grounds as the trial court anticipated, and we remand for entry of a revised sentencing order.

### 2. Criminal Confinement with a Deadly Weapon and Battery with a Deadly Weapon

[28]   Having vacated Williams' convictions for battery resulting in moderate bodily injury and pointing a firearm on double jeopardy grounds, we proceed to Williams' contention that "the same facts used to convict [Williams] of criminal confinement were also used to convict him of Battery by Means of a Deadly Weapon[.]" Appellant's Br. p. 10. As stated above, the *Richardson* "actual evidence" test is not violated if the evidentiary facts used to establish the essential elements of one offense establish only one or even several, but not all, of the essential elements of a second offense. *Spivey*, 761 N.E.2d at 833.

[29]   To convict Williams of criminal confinement, the State was required to prove that Williams, while armed with a deadly weapon, knowingly or intentionally confined Johnson without Johnson's consent. To prove that Williams committed battery by means of a deadly weapon, the State was required to prove that Williams knowingly or intentionally touched Johnson by punching, kicking, and striking Johnson with a handgun—a deadly weapon.

[30]   The *Richardson* "actual evidence" test is not violated here. The State presented evidence of two separate incidents of criminal confinement. The first incident

occurred in Ashley's kitchen and involved Williams forcing Johnson to the floor; hitting and kicking Johnson; hitting Johnson with a gun; and refusing to let Johnson up or leave, as Davis held Johnson down. The second incident occurred when Williams walked Johnson from Ashley's house, at gunpoint, to the entrance of Ashley's housing complex and ordered Johnson to leave and never return. We conclude there is no reasonable possibility that the jury used the same evidentiary facts to establish the essential elements of the offense of battery with a deadly weapon as it used to establish criminal confinement with a deadly weapon. Williams' convictions for criminal confinement, a Level 3 felony, and battery with a deadly weapon do not run afoul of double jeopardy.

### III.  *Habitual Offender Amendment*

[31] Williams argues that the trial court erred in allowing the State to amend the habitual offender information after the jury was impaneled and his jury trial had commenced. Specifically, Williams argues that "[the] amendment was improper because the [habitual offender] information was not amended at least 30 days prior to trial, or in the alternative[,] [the] request was not made prior to the commencement of trial." Appellant's Br. p. 14. The State counters that it did not amend the habitual offender information but, rather, corrected a scrivener's error to comport with the applicable statute.

[32] Indiana Code Section 35-50-2-8(a) provides that "[t]he State may seek to have a person sentenced as a habitual offender for a felony by alleging, on one (1) or more pages separate from the rest of the charging instrument, that the person has accumulated the required number of prior unrelated felony convictions in

accordance with this section." Also, Indiana Code Section 35-50-2-8(b) provides:

> (a) A person convicted of murder or of a Level 1 through Level 4 felony is a habitual offender if the state proves beyond a reasonable doubt that:
>
> > (1) the person has been convicted of two (2) prior unrelated felonies; and
>
> > (2) at least one (1) of the prior unrelated felonies is not a Level 6 felony or a Class D felony.

Here, Williams was convicted of criminal confinement, a Level 3 felony.

[33] Indiana Code Section 35-34-1-5, governing, amendment of charges inter alia, provides, in pertinent part, as follows:

> (a) An indictment or information which charges the commission of an offense may not be dismissed but may be amended on motion by the prosecuting attorney *at any time* because of any immaterial defect, including:
>
> > (1) any miswriting, misspelling, or grammatical error;
>
> > . . .
>
> > (6) any mistake in the name of the court or county in the title of the action, or the statutory provision alleged to have been violated;
>
> > . . .

(9) any other defect which does not prejudice the substantial rights of the defendant.

\* \* \* \* \*

(c) Upon motion of the prosecuting attorney, the court may, *at any time* before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights[3] of the defendant.

I.C. § 35-34-1-5 (emphasis added).

[34] The first step in evaluating the permissibility of amending an information is to determine whether the amendment was addressed to a matter of substance or one of form or immaterial defect. *Fajardo v. State,* 859 N.E.2d 1201, 1207 (Ind. 2007), *superseded in part on other grounds,* Ind. Code § 35-34-1-5, effective May 7, 2007. If the amendment was one of substance, the trial court was not permitted to allow it, regardless of prejudice or lack thereof, because it occurred after the trial started. *See* Ind. Code § 35-34-1-5(b)(2). "[A]n amendment is one of form,

---

[3] As we have previously stated:

> A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights. Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges.

*Gomez v. State,* 907 N.E.2d 607, 611 (Ind. Ct. App. 2009) (citations and internal quotations omitted), *trans. denied.*

not substance, if both (a) a defense under the original information would be equally available under the amendment, and (b) the accused's evidence would apply equally to the information in either form." *Fajardo*, 859 N.E.2d at 1207. Even if the above two criteria are satisfied, however, the amendment may yet be one of form, because "an amendment is one of substance only if it is essential to making a valid charge of the crime." *Id.*

[35] In support of his position, Williams relies upon *Nunley v. State*, 995 N.E.2d 718, 724-726 (Ind. Ct. App. 2013), *clarified on reh'g*, 4 N.E.3d 669 (Ind. Ct. App. 2013); however, *Nunley* is distinguishable from the instant facts. In *Nunley*, the State's original habitual offender information identified Nunley's prior convictions for theft and possession of cocaine as predicate offenses for enhancing Nunley's sentence. By application of an exception enumerated in Indiana Code Section 35-50-2-8(d)(3), Nunley's conviction for possession of cocaine did not qualify for purposes of the habitual offender statute. The day after a jury was impaneled for Nunley's jury trial, the State sought leave to amend the habitual offender information to delete the possession offense and "to add additional theft charges that would go to a[] habitual offender allegation." *Id*. at 722. The trial court permitted the State's amendment and postponed the start of the trial to allow the defense to prepare.

[36] On appeal of this issue, a panel of this court reversed the trial court's judgment and concluded that, "[b]ecause the amendment was essential to the allegation of Nunley being a[] habitual offender, and because Nunley's defense under the original information[,] [namely, that the State could not establish that he was a

habitual offender based on the information as alleged] evaporated under the amendment, the amendment was one of substance rather than form and was not allowed under subsection (c)." *Id.* at 724. In *Nunley*, of the two predicate offenses asserted by the State, one was excepted and, but for the substantive amendment improperly permitted by the trial court, the State could not have established that Nunley was a habitual offender.

[37] Here, the State's original habitual offender information alleged that Williams had three prior, unrelated felony convictions. To prove that Williams was a habitual offender, the State was required to prove that Williams—if he was convicted of a Level 3 felony—had *two* prior unrelated felony convictions of which "at least one . . . [was] not a Level 6 felony or a Class D felony." *See* I.C. § 35-50-2-8(b).

[38] By asserting three predicate offenses, the State included one more predicate offense than was required under the statute. While this may be overkill, it did not prejudice Williams. Unlike Nunley, Williams was not, thereby, stripped of an available defense; nor was a predicate felony attributed to Williams that was explicitly exempted from habitual offender consideration. Williams could proceed with the same defense before and after the State's amendment. Moreover, the amendment was not "essential to making a valid charge" that Williams was a habitual offender. *See Fajardo*, 859 N.E.3d at 1207. We, therefore, conclude that the amendment was one of form that corrected an immaterial defect; and because amendments of form may be made "at any time," we find that Williams suffered no prejudice to his substantial rights from

the amendment of the habitual offender information after the commencement of trial. *See* I.C. § 35-34-1-5(c).

### *IV.    Habitual Offender Instruction*

Next, Williams alleges fundamental error regarding the trial court's instruction to the jury. Williams concedes that he did not object at trial; however, he argues that the trial court improperly instructed the jury regarding the habitual offender enhancement by failing to instruct the jury that "at least 1 of the prior unrelated felony convictions [may] not [be] a level 6 or Class D felony conviction." Appellant's App. p. 16.

"Failure to object to a jury instruction results in waiver on appeal, unless giving the instruction was fundamental error." *Wright v. State*, 730 N.E.2d 713, 716 (Ind. 2000). An error may be fundamental and, thus, not subject to waiver, if it is a "substantial blatant violation of basic principles." *Moreland v. State*, 701 N.E.2d 288, 294 (Ind. Ct. App. 1998) (internal quotation omitted). "This exception to the general rule requiring a contemporaneous objection is narrow, providing relief only in 'egregious circumstances' that made a fair trial impossible." *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016).

In considering a claim of fundamental error with respect to jury instructions, we look to the instructions as a whole to determine if they were adequate. *Munford v. State*, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010). "When determining whether a defendant suffered a due process violation based on an incorrect jury instruction, we look not to the erroneous instruction in isolation, but in the

context of all relevant information given to the jury, including closing argument, and other instructions." *Boesch v. State*, 778 N.E.2d 1276, 1279 (Ind. 2002) (internal citations omitted). When all information, as a whole, does not mislead the jury as to the correct understanding of the law, there is no due process violation. *Id.*

[42] As noted above, Indiana Code Section 35-50-2-8 provides that a person convicted of a Level 3 felony, as Williams was, is a habitual offender if the State proves: "(1) the person has been convicted of two (2) prior unrelated felonies; and (2*) at least one (1) of the prior unrelated felonies is not a Level 6 felony or a Class D felony*." I.C. § 35-50-2-8 (emphasis added).

[43] In instructing the jury regarding the habitual offender enhancement, the trial court stated:

> In this case, the State of Indiana has charged the Defendant with an additional count of the Information in this case that charges the Defendant with being a[] habitual offender. This Count reads as follows:
>
> The charge, omitting formal parts, reads as follows:
>
> That on or about January 31, 2018, in the County of Hamilton, State of Indiana, Anthony Steven Williams, Jr. was a habitual offender in that he accumulated two prior unrelated felony convictions; to-wit:
>
> One, the Defendant was convicted of and sentenced for Auto Theft, a Class C felony, on or about September 18, 2008 in Cause

Number 29D01-0804-FC-25 in the Hamilton County Superior Court 1, Hamilton County, Indiana.

Thereafter, the Defendant committed Fraud, a Level 6 felony, on or about June 28, 2016 and was convicted and sentenced for that offense on or about November 21, 2016 in Cause Number 29D05-1607-F6-5369 in the Hamilton County Superior Court 5, Hamilton County, Indiana; and

All of which is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana.

The State may seek to have a person sentenced as a[] habitual offender for a Level 3 felony by proving that the person has accumulated two prior unrelated felony convictions.

The Court instructs you that Auto Theft and Fraud are both felonies.

You may find the Defendant to be a habitual offender only if the State has proven each of the following facts beyond a reasonable doubt: one, the Defendant; two, committed and was convicted and sentenced for Auto Theft, a Class C felony, and; three, later committed and was convicted and sentenced for Fraud, a Level 6 felony, and; four, later committed Count 2, Criminal Confinement, a Level 3 felony.

If the State failed to prove each of these facts beyond a reasonable doubt, you must find the Defendant is not a habitual offender.

Tr. Vol. III pp. 178-79.

[44] Williams takes issue with the trial court's failure to instruct jurors that, in order to arrive upon a habitual offender finding, "*at least one (1) of the prior unrelated felonies [may] not [be] a Level 6 felony or a Class D felony*." I.C. § 35-50-2-8 (emphasis added). While we agree with Williams that the trial court did not include the above-emphasized statutory provision in its jury instruction, the omission does not constitute fundamental error as alleged. First, the issue of whether "at least one (1) of the prior unrelated felonies [may] not [be] a Level 6 felony or a Class D felony" is a question of law for the trial court to determine; and, accordingly, no jury instruction was required.

[45] Moreover, the jury instruction at issue appears to be based on the Indiana Pattern Jury instructions. *See Santiago v. State*, 985 N.E.2d 760, 763 (Ind. Ct. App. 2013) ("The preferred practice in Indiana is to use pattern jury instructions."). Pattern Instruction 15.1240, regarding the elements for a habitual offender adjudication where the defendant faces a Level 1, 2, 3, or 4 felony as the principal charge, provides:

> The State may seek to have a person sentenced as a habitual offender for a Level [1] [2] [3] [4] felony by proving that the person has accumulated two (2) prior unrelated felony convictions.
>
> The Court instructs you that [name first alleged prior, e.g. "burglary"] and [name second alleged prior] are both felonies.
>
> You may find the Defendant to be a habitual offender only if the State has proven each of the following facts beyond a reasonable doubt:

1. The Defendant:

2. committed and was convicted and sentenced for [*name alleged felony, e.g. """""burglary"*], and;

3. later committed and was convicted and sentenced for [*name alleged second felony*], and;

4. later committed Count _____ [and/or Count _____ (name felony(s) of which Defendant was convicted in Phase I), a Level [1] [2] [3] [4] felony.

If the State failed to prove each of these facts beyond a reasonable doubt, you must find the Defendant is not a habitual offender.

[46] The trial court's habitual offender instruction here mirrored Pattern Instruction 15.1240 and properly conveyed the law to the jury; thus, we conclude that the trial court did not err in instructing the jury.

## V. *Abuse of Sentencing Discretion*

[47] Lastly, Williams argues that the trial court erred because it "did not attach the habitual offender enhancement to [Williams'] level 3 felony conviction but rather improperly ordered that his habitual offender enhancement be imposed as a consecutive sentence." Appellant's Br. p. 20. He argues, "It cannot be said that [Williams'] habitual offender enhancement is anything other than a consecutive sentence if he received a 25-year sentence for a crime which [ha]s a 16-year maximum." We reject this tortured argument, which reflects a misreading of the pertinent statute.

[48] Indiana Code Section 35-50-2-8 provides that "[t]he court shall sentence a person found to be a habitual offender to an *additional fixed term* that is between six (6) and twenty (20) years, for a person convicted of murder or a Level 1 through Level 4 felony. . . ."[4] I.C. § 35-50-2-8(i) (emphasis added). Indiana Code Section 35-50-2-8 further provides:

> Habitual offender is a status that results in an enhanced sentence. *It is not a separate crime and does not result in a consecutive sentence.* The court shall attach the habitual offender enhancement to the felony conviction with the highest sentence imposed and specify which felony count is being enhanced. If the felony enhanced by the habitual offender determination is set aside or vacated, the court shall resentence the person and apply the habitual offender enhancement to the felony conviction with the next highest sentence in the underlying cause, if any.

I.C. § 35-50-2-8(j) (emphasis added).

[49] In sentencing Williams, the trial court stated, in pertinent part, the following:

> THE COURT: [ ] You were convicted of Count 2 in this case. The matter of Criminal Confinement as a Level 3 felony. A Level 6 felony carries with it a sentence between 3 to 16 years with an advisory sentence of 9 years. The Court has reviewed with you numerous aggravating and mitigating circumstances. Based upon the aggravating circumstances, which I do believe outweigh the mitigating circumstances, the Court believes that a

---

[4] Here, Williams was convicted of a Level 3 felony.

> 15[-]year sentence is appropriate in regards to Level 3, or in regards to Count 2.

> The Habitual Offender Enhancement will add ten years to that sentence, making Count 2 a 25[-]year sentence. Of the 25 years, I will order that 20 years are to be executed and 5 years suspended. Of the 20 years that are executed, I will order that all 20 years are to be served in the Department of Correction[].

Tr. Vol. III p. 209.

[50] Thus, as explicitly prescribed by Indiana Code Section 35-50-2-8(j), the trial court affixed the ten-year habitual offender enhancement to Williams' felony conviction with the highest sentence imposed—criminal confinement, a Level 3 felony—and specified which felony count the trial court intended to enhance. The record establishes that the trial court enhanced Williams' felony conviction with the highest sentence and did not impose a consecutive sentence. We find no abuse of the trial court's sentencing discretion.

# Conclusion

[51] Williams' convictions for criminal confinement, a Level 3 felony, and battery with a deadly weapon, a Level 5 felony, do not violate the prohibition against double jeopardy; however, his convictions for battery resulting in moderate bodily injury and pointing a firearm, Level 6 felonies, violate double jeopardy principles. Accordingly, we vacate Williams' convictions for battery resulting in moderate bodily injury and pointing a firearm, Level 6 felonies, and we remand for entry of a revised sentencing order.

[52] The trial court did not err in enhancing two of Williams' convictions for his use of the same deadly weapon. Nor did the trial court err in allowing the State to amend the habitual offender information after the commencement of trial to correct a scrivener's error. No fundamental error arose from the trial court's instructions to the jury regarding the habitual offender enhancement. Sufficient evidence exists to support Williams' conviction for criminal confinement. The trial court did not improperly impose consecutive sentences when it sentenced Williams on the habitual offender adjudication. We affirm in part, reverse in part, and remand for entry of a revised sentencing order.

[53] Affirmed in part, reversed in part, and remanded.

Baker, J., and May, J., concur.